No. 19,703.

SHIRLEY A. LINDSAY, ET AL. *v.* PUBLIC SERVICE
COMPANY OF COLORADO, ET AL.

(362 P. [2d] 407)

Decided May 29, 1961.

Messrs. WILLIAMS, ERICKSON & BROWN, for plaintiffs
in error.

Messrs. LEE, BRYANS, KELLY & STANSFIELD, Mr. ROBERT
F. THOMPSON, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

THE present writ of error to the district court of the
City and County of Denver seeks review of a judgment

affirming an order of the Industrial Commission, which order denied death benefits under the Workmen's Compensation Act to the surviving wife and children of William D. Lindsay, deceased, who met his death following an injury incurred in a softball game.

At the time of his death Lindsay was in the employ of the Public Service Company in a job which was entitled "Junior Domestic Appliance Representative." The evidence before the commission disclosed that Lindsay, in common with other members of the Public Service Company, was a member of the Gas and Electric Club, an organization which manages various employee recreation activities such as baseball, basketball, bowling, golf, a company picnic and an annual smoker. All male employees of the Public Service Company automatically become members of this organization although they are not required to pay dues. The expenses are wholly paid by the company, and in the year 1959 these amounted to $19,254 of which $1,225 was spent on softball. This club is managed by a board of directors consisting of 12 employees who serve in groups of four for three year terms. Each year the retiring directors are a nominating committee to choose their successors, each of the new directors coming from one of the company's four principal divisions. This board meets 10 times per year and the members serve as chairmen of committees which have to do with particular activities. This club has no formal written constitution but does have a set of by-laws which serve to define procedures and activities. The annual budget is set by the directors and approved by the company, definite amounts being allocated to particular activities, among which is the publication of a newspaper. There are eight softball teams which play in an intracompany league. Each team is composed entirely of company employees through the G and E Club. A fee of $50.00 is paid annually out of the budget allotment to the city recreation department to compensate for expenses connected with the use of playing fields and fa-

cilities. Equipment is furnished by the company and the uniforms display a company symbol used in company advertising which is called "Reddy Kilowatt." Although company time is used for various administrative aspects of the softball program, company time is never used for practice or for playing games (softball, that is). That there was no compulsion to participate seems undisputed.

On the basis of the above evidence, the referee ruled that the company contribution was merely a gratuity and further held that the injury and death was not proximately caused by an accident arising out of and in the course of the employment. The commission affirmed this ruling and the district court affirmed the commission.

In urging that the court committed error, the claimants make these points:

1. That the Act must be liberally construed to give effect to its beneficent purposes and objectives; that an activity is within the scope of the Act if it is conditioned or even an incident of the employment.

2. It is said that off-hour recreation financed and managed by the employer for the benefit of its employees is an incident and a condition of the employment.

The Public Service Company argues that the activity which gave rise to this injury was in no sense a condition or even an incident of the employment; that it was carried on purely for the benefit of the employees and was entirely voluntary; that thus the order denying compensation is fully supported by the evidence and the law.

Thus the issue for determination is whether an injury incurred in a sports program, conducted in off-hours and away from the premises in a public park and which sports program is financed by the company but in part supported by the municipality, wherein the advertising value to the company is negligible and the benefit to the

company consists entirely in the improvement of employee morale, is compensable.

A considerable body of law has developed in this recreation category during the past several years and, although there is no Colorado decision directly in point, there are related cases which at least suggest the controlling criteria. These include *Industrial Commission v. Murphy,* 102 Colo. 59, 76 P. (2d) 741; *Industrial Commission v. Day,* 107 Colo. 332, 111 P. (2d) 1061; *University of Denver v. Nemeth,* 127 Colo. 385, 257 P. (2d) 423; and *State Fund v. Industrial Commission,* 135 Colo. 570, 314 P. (2d) 288.

In the *Murphy* case a group of employees of a mining company organized themselves into a baseball team and obtained financial assistance from the employer. The claimant, who was the self-appointed team manager, was injured in an automobile accident while returning from a game. Compensation was denied. The Court said:

"No definition of 'arising out of and in the course of employment' to be found in this jurisdiction can be stretched to cover the instant case. * * * "

The Court emphasized the fact that the ball game was played off the company premises and occurred on a Sunday and that the injury did not occur in the game, but was suffered while traveling from it.

On similar reasoning, compensation was denied to a police officer who was injured at a turkey shoot sponsored by the Police Protective Association in the *Day* case, supra. Here the emphasis was placed on the fact that the activity was conceived and managed by fellow officers although encouraged by the employer. It appeared that the department had a separate mandatory training program for the purpose of promoting efficiency in the use of firearms. Membership in the Police Protective Association was shown to be optional. The Court said:

" * * * We cannot differentiate between this 'turkey shoot' and an ordinary hunting excursion, or a foot race,

conceived and managed by Day's fellow officers, encouraged thereto by their superiors. Participation in either might be remotely beneficial and inspirational, but fall far short of being official duties. The fact, if it be a fact, that this accident arose 'in the line of' Day's duties by no means forces the conclusion that it arose out of his employment. Full payment does not establish that the department so held, and if it did, that construction could not bind the fund."

In the *Nemeth* case the claimant suffered injuries during spring football practice at the University. The evidence showed him to be the recipient of a football "scholarship." Under it he received three meals per day and $50 per month so long as he remained on the football squad. Based upon the fact that the condition of employment was his continued football playing, compensation was granted. In upholding the award of the commission the Court speaking through Mr. Justice Knauss said:

"In the instant case the employment at the University, so far as Nemeth was concerned, was dependent on his playing football, and he could not retain his job without playing football. The evidence before the Industrial Commission was to the effect that his job and other remuneration incident thereto came to an end when he ceased to 'make good' in football. Under the record as here made, the Commission and the District Court may have properly concluded, as they did determine, that Nemeth was an employee of the University and sustained an accidental injury arising out of and in the course of his employment."

In *State Fund v. Industrial Commission,* supra, the claimant was injured while playing football for the State College. Because of the remoteness of the connection between football playing and his employment, compensation was denied. Here it was shown that the claimant had an athletic scholarship under which tuition was waived. He was paid 70¢ per hour for various work on

the college farm and in the student lounge. It was shown that various students received assistance of the kind that was received by this claimant regardless of whether they participated in athletics. It did not appear that football playing was a necessary condition to his continued employment. Since there was no such contractual arrangement, it was held that compensation could not be validly awarded.

Though the above cases suggest a viewpoint and tests for the present determination, they do not mark out a line of demarcation between compensable and non-compensable injuries in circumstances like the present one, and thus we turn to other authorities in an effort to find criteria which are more applicable to the instant facts. *Larson, Workmen's Compensation Law*, Sec. 22, sets up three alternative tests for determining whether activities are within the course of employment. He declares (p. 328):

"Recreational or social activities are within the course of employment when

"(a) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

"(b) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

"(c) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."

Neither (a) nor (b) applies to the facts of the present case and thus part (c), having to do with employer benefit, furnishes the only possible basis for holding the injury in the case at bar to be an incident of the employment.

Numerous cases deal with this question. For example, the Illinois case of *Jewel Tea Company v. Industrial*

*Commission,* 6 Ill. (2d) 304, 128 N.E. (2d) 699, allowed compensation in circumstances quite similar to those of the case at bar, but an added factor, employer advertising, existed there but is not present in the instant case. In other respects the recreational activity was connected with the employer business in that it was designed to promote competitive selling. Thus we conclude that this case is distinguishable from the present case.

In *Wilson v. General Motors Corporation,* 298 N.Y. 468, 84 N.E. (2d) 781, compensation was denied by a divided Court upon the basis that there was a failure to show that the company derived any direct benefit (other than improvement of employee morale), and on the ground that the recreation program constituted a gratuitous contribution to the employees' social and recreational life.

The Minnesota Court in *LeBar v. Ewald Bros. Dairy,* 217 Minn. 16, 13 N.W. (2d) 729, affirmed the award of compensation in circumstances much like those in the present case, but like the *Jewel Tea* case, the softball was proximately connected with the operation of the business. It was part of a recreation program conducted for the benefit of the residents of the city and was designed to develop public goodwill by publicizing the dairy business. The Minnesota Court, while concluding that the claimant was not actually working for the dairy business, nevertheless held that " * * * these contest games were essential or desirable for their dairy business."

More recent decisions denying compensation include *McFarland v. St. Louis Car Co.,* 262 S.W. (2d) 344 (Mo.); *Konrad v. Anheuser-Busch, Inc.,* 48 N.J. Super. 386, 137 A. (2d) 633; *Hydro-Line Manufacturing Co. v. Industrial Commission,* 15 Ill. (2d) 156, 154 N.E. (2d) 234. The *Jewel Tea* case was distinguished in this latter decision on the ground that the benefit to the employer there was shown to be direct. See also *United Parcel Service of America v. Industrial Accident Commission,* 172 Cal. App. (2d) 73, 342 P. (2d) 41.

The distinction we here make is very clearly shown by comparing the *Jewel Tea* case and the more recent Illinois decision, *Hydro-Line Manufacturing Co. v. Industrial Commission,* supra. In this latter case the Court distinguished the *Jewel Tea* case by saying:

" * * * We reviewed applicable cases from other jurisdictions with varying factual situations and found that an award of compensation was dependent upon the degree of employer organization, supervision, pressure, actual or inferred, and the benefit derived by the employer from the particular recreational activity. We determined the essential inquiry to be whether the employer could be deemed to sustain a direct benefit from the recreational activity so that it could be regarded as an incident to the employment. Upon these facts, we found that the activity involved was incidental to the employment."

From an analysis of the facts in the present case with a view to determining whether real employer benefit in the sense required is to be inferred, we note that the only apparent benefit is that of improvement of employee morale. The manner in which the activity was conducted, that is, intra-company and with no obvious use of the company name plus the fact that the company here is a utility and thus has little competitive or goodwill interest to advance renders this aspect negligible. In commenting on whether the improvement of employee morale is of sufficient benefit to make the case an incident of employment, *Larson,* supra, pp. 340, 341, points out that if employee benefit is to be the test it would become most difficult to exclude any off-hour activity of the employee. He declares:

"The benefit to the employer that is sufficient to make the recreation a part of the employment may take various forms. The most obvious is the retention by the employer of the gate receipts, as in the *Holst* case. One of the commonest is the advertising value of teams that bear the company's name on their blazers and get the

company's name displayed without charge in the head-lines on the sport page. But, as the *Wilson* case shows, this argument is valid only when advertising and publicity do in fact attend the recreation, and is invalid when the audience consists only of other employees. Another type of benefit that has been held to support an award was the insinuating of speeches on salesmanship into the company dance at which claimant fell and fractured her wrist while dancing.

"Controversy enters when the benefit asserted is the intangible value of increased worker efficiency and morale and of increased good-will between employer and employed. Basically, the trouble with this argument is not that such benefits do not result, but that they result from every game the employee plays whether connected with his work or not. In this respect, the argument is reminiscent of the same view sometimes heard in connection with the personal comfort cases: eating, resting and the like do indeed improve the efficiency of the employee, but this is equally true (and even more true) of the sleeping and eating which he does at home. And so, just as in the sleeping and eating cases some arbitrary time and space limitations must circumscribe the area within which the 'benefit' establishes work-connection, since otherwise there is no stopping-point which can be defined short of complete coverage of all the employees' refreshing social and recreational activities. It can be taken as the distinctly majority view that these morale and efficiency benefits are not alone enough to bring recreation with the course of employment."

■ We are constrained to hold that a line of demarcation must be drawn between the activities which directly and those which indirectly benefit the employer, where, as here, the public advertising is no factor at all and the recreation is not otherwise connected with the operation of the business, the only benefit being the indirect one of keeping the employees happy, the activity

is not an incident of the employment and the injury sustained is therefore not compensable.

It follows that the facts do not spell out legal liability as a matter of law and therefore that the judgment of the district court is correct.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE MCWILLIAMS concur.