No. 19,635.

GAME AND FISH DEPARTMENT, STATE OF COLORADO, ET AL.,
*v.* MILDRED I. PARDOE AND INDUSTRIAL COMMISSION
OF COLORADO.

(363 P. [2d] 1067)

Decided July 31, 1961.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, Mr. ALIOUS ROCKETT, Mr. FRED B. DUDLEY, for plaintiffs in error.

Messrs. HARTWELL & STARKEY, for defendant in error Mildred I. Pardoe.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant for defendant in error Industrial Commission of Colorado.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

THIS is a Workmen's Compensation case wherein the State Compensation Insurance Fund (hereafter referred to as the Fund) and the Game and Fish Department for the State of Colorado (hereafter referred to as Game and Fish) seek to reverse the judgment of the trial court which affirmed a final award of the Industrial Commission (hereafter referred to as the Commission), granting compensation benefits to Mildred I. Pardoe as the surviving widow of Harry N. Pardoe, who prior to his death was an employee of Game and Fish.

The ultimate question to be resolved is whether the Commission, on the basis of the record before it, acted "without or in excess of its powers" and also whether the evidence supported the findings and award. To re-

solve this question of necessity requires at least a brief recital of the evidentiary matter presented to the Commission.

In its written report of the accident, Game and Fish, as the employer, stated that Harry N. Pardoe was its employee assigned to work at the North Fork Thompson Rearing Unit at Drake, Colorado, and that he was fatally injured on November 14, 1958. In response to the specific request to "describe fully how accident occurred and what employee was doing at the time," Game and Fish, through its personnel officer, John H. Morris, stated: "Apparently employee was coming down mountain trail on department tractor after repairing TV antenna when vehicle got out of control. Employee either jumped or was thrown from tractor striking head on a large rock which broke his neck, causing instant death. Knowing that all employees in this class are on twenty-four-hour call and required to live on department property, we feel that this was service incurred, and as a result Mr. Pardoe's family should be entitled to compensation. Those men put in far more than the required five and one-half day week and must necessarily perform such tasks during their normal day * * *."

Claim for compensation was filed by Mildred I. Pardoe, as the surviving widow, and thereafter the Fund gave appropriate notice of its intention to contest her claim.

Upon hearing before the referee, two witnesses were called in behalf of the claimant, namely the claimant herself and John H. Morris, who as was mentioned above was the personnel officer for Game and Fish. Neither the Fund nor Game and Fish called any witness, and accordingly the oral testimony is not in dispute. The dispute arises as to the legal effect thereof.

Mildred I. Pardoe testified that she is the surviving widow of Harry N. Pardoe and that the latter met his untimely death at about 11 o'clock A.M. on Friday, November 14, 1958. She stated that shortly before the acci-

dent her husband had taken a State of Colorado owned tractor and gone "up on the mountain" behind their house to check the TV antenna and the wire lead into their house. Having completed his examination he was returning to the fish hatchery when the tractor "went off the road" and Pardoe was killed. The TV antenna here involved not only served the Pardoe house, but also served the house of the other employee who resided at the fish hatchery. Both houses were owned by the Game and Fish. However, the TV antenna, the wire lead and the TV sets were *not* owned by Game and Fish, but were the personal property of the Pardoes and the other employee.

Morris testified that Pardoe was an employee of Game and Fish and that he and his family had been stationed at the Drake rearing pond since 1950. For some time prior to his death, Pardoe had been superintendent of the hatchery and as such "he is in charge of every activity that goes on at that unit, including the maintenance of property, and maintaining general repairs," in addition to his regular and usual duties about the hatchery proper. Also, as superintendent, he "is responsible for the morale of the Employees and their efficiency on the job." Over objection, Morris was permitted to express his personal opinion that at the moment of the accident, which resulted in his death, Harry N. Pardoe "was involved in an act, a duty delegated to him by the State Game and Fish Department."

It was also established through these two witnesses that Pardoe was required to live on the hatchery premises in this State-owned house, since he was on call "24 hours a day, 7 days a week." Also, that this particular hatchery is located in the mountains, west of Loveland, and is in a somewhat isolated and remote sector. Morris testified that because of the remote location of the hatchery, and the resultant lack of recreational facilities, morale of the employees was a real problem and Pardoe as superintendent was directly responsible for the morale

of the employees, and that any morale building activity on his part was most definitely with the "consent" of Game and Fish.

Based on the record, the referee on March 5, 1959, found, inter alia, that "Harry N. Pardoe was killed in an accident arising out of and in the course of his employment" and awarded compensation benefits to his widow. On April 25, 1960, the Commission affirmed and adopted the referee's order of March 5, 1959. By so-called supplemental award the Commission on May 12, 1960, re-affirmed its order of April 25, 1960, as the final award of the Commission.

The Fund and Game and Fish sought review of this award in the district court, where the award was affirmed. By writ of error reversal of this judgment is now sought.

The Fund and Game and Fish contend: (1) that the fatal accident did not arise out of and in the course of deceased's employment, but on the contrary, the deceased was killed while engaged in an activity purely personal to himself; (2) that the referee committed reversible error in permitting John Morris to express an "opinion" as to whether the deceased at the time of the accident was performing duties delegated to him by the employer; and (3) that the order of the referee is insufficient for the reason that it does not state or point up the "evidentiary facts" upon which the ultimate finding that "Harry N. Pardoe was killed in an accident arising out of and in the scope of his employment" could be based. We shall consider these three assignments in inverse order.

■ As was just noted, the referee on March 5, 1959, found, inter alia, that Pardoe was killed in an accident "arising out of and in the course of his employment." However, he made no so-called "evidentiary findings" upon which his ultimate finding was or could be based. On March 19, 1959, the Fund and Game and Fish filed their "Application for Review of Claim before the In-

dustrial Commission." On April 29, 1959, a legislative amendment to C.R.S. '53, 81-14-6, became effective, which provided that when such an application was filed attacking the referee's order the referee should, if he has not already done so, "make findings of fact which shall include all evidentiary and ultimate facts necessary to support his order." This statute operates prospectively and not retroactively, and its effective date is subsequent to the date of the referee's order and the petition seeking a review thereof. However, even before the enactment of this particular amendment to said statute, this Court in *United States Fidelity & Guaranty Co. v. Industrial Commission,* 128 Colo. 68, 259 P. (2d) 869, said: " * * * *if the testimony is conflicting* the Commission's duty is to resolve the conflict, determine what is true and what is false, and announce the fact in accordance with its findings." (Emphasis supplied.) In the instant case, however, there was no conflict in the testimony, and when confronted with an identical situation, this Court in *Prouse v. Industrial Commission,* 69 Colo. 382, 194 Pac. 625, said: " * * * the evidence, however, in this case, is not conflicting, the facts are undisputed, and we think the Commission's decision was right, therefore the case is not remanded for more detailed finding, but we consider the evidence as if it were the finding of fact." See also, in this regard, *Bransall v. Industrial Commission,* 126 Colo. 556, 251 P. (2d) 935. For the same reason we decline to order remand of this matter to the Commission and prefer to resolve the case on its merits.

We are next asked to vacate this award for the reason that the referee allegedly committed error in permitting, over appropriate objection, the witness Morris to express his "opinion" as to whether Pardoe at the time of the fatal accident was performing a duty delegated to him by his employer. Under the circumstances it was error for the referee to permit the witness Morris to express this "opinion," which was tantamount to permitting the witness to opine that the accident arose out

of and in the scope of this employment. This is not a proper subject matter for expert opinion testimony and actually constituted an invasion of the prerogatives of the Commission, which is itself charged with the duty of making a finding on this issue. However, it has been repeatedly held by this Court that we cannot reverse an award simply because of the erroneous admission of incompetent or improper evidence, although at the same time we may nonetheless under applicable statute reverse an award if there be no competent evidence to support it. See C.R.S. '53, 81-14-12 and 14; *Armour and Company v. Industrial Commission,* 78 Colo. 569, 243 Pac. 546, and *Vaughn v. Industrial Commission,* 79 Colo. 257, 245 Pac. 712. So, the real issue is whether, independent of this incompetent and improper opinion testimony, there was still sufficient competent evidence to support the award. We hold that there was.

Harry N. Pardoe was employed by Game and Fish to work at its hatchery near Drake, Colorado. In addition to the usual duties at the hatchery itself, he was also "on call" twenty-four hours a day, seven days per week. The inherent nature of the work at the hatchery dictated that he be "on call." To facilitate in this particular, Game and Fish provided Pardoe with housing on the hatchery premises and required him and his family to live therein. As a part of his duties he was expected to maintain the premises, including his place of residence and appurtenances thereto. Had Pardoe been killed while repairing a TV antenna on the roof of the state-owned house in which he was required to live, he would certainly under such circumstances be deemed to have been "maintaining the premises" and thus the accident would be one arising out of and in the course of his employment. And the fact that in the instant case the TV antenna is not on the roof of the house but on the mountain behind it is not a significant fact which would alter or change the end result.

Also, this hatchery was located in the mountains

some distance west of Loveland. The employees and their families were *required* by Game and Fish to live in this semi-isolated spot. Recreational facilities were nil. Morale of the employees was a real problem, and Pardoe as superintendent was "responsible for the morale of the employees and their efficiency on the job" and any efforts in this direction by Pardoe were "definitely" with the "consent" of Game and Fish. The foregoing is undisputed and in fact was established by the employer. Without getting into a dispute as to the relative worth of present-day TV programming, it is still obvious to all that TV does entertain, and therefore logically tends to keep up the morale of its viewers, particularly those who because of their isolated or semi-isolated place of residence are deprived of the usual types of recreational facilities. Under all the particular circumstances of the case, no strained interpretation is required to hold that at the time of the accident Pardoe was about his master's business and that the accident did arise out of and in the scope of his employment. In repairing the TV antenna Pardoe was rendering his employer a direct and real benefit. At least that was the employer's testimony, and we are disinclined to dispute it. Such distinguishes this case from *Lindsay v. Public Service Co. of Colorado,* 146 Colo. 579, 362 P. (2d) 407, where the activity there under consideration, a softball game, resulted in only indirect and remote benefit to the employer.

In *University of Denver v. Nemeth,* 127 Colo. 385, 257 P. (2d) 423, it was said: "An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of employment, *in other words out of the employment looked at in any of its aspects.* * * * Such acts as are necessary to the life, comfort and convenience of the workman while at work, though personal to himself and not technically acts of service, are incidental to the services, and an accident occurring in the performance of such acts is deemed to have arisen

out of and in the course of his employment." (Emphasis supplied.)

Finally, one other fact and circumstance of the instant case is deemed worthy of comment. Pardoe was a "resident employee" and "on call" twenty-four hours a day, seven days a week. So, at the very least, Pardoe at the time of the accident was "on duty" in the sense that he was "on call." Larson Workmen's Compensation Law, §24 and 24.10 states: "When an employee is required to live on the premises, * * * and is continuously on call (whether or not actually on duty), the entire period of his presence on the premises pursuant to the requirement is deemed included in the course of employment. * * * when a worker is on the premises night and day all his personal comfort and incidental activities are within the course of his employment * * *." Section 24.23 of the same text additionally states that a resident employee continuously on call, who is injured *off* the premises, has nonetheless still suffered an accident arising out of his employment, "so long as the continuity of employment is maintained during the activity off the premises."

The record in the instant case is not clear as to whether the accident was on or off the fish hatchery premises, but such would not seem to be controlling. The controlling fact, according to Larson, is whether the "continuity of employment" has been maintained. Pardoe's "continuity of employment" was maintained and at the precise moment of the fatal accident (11 o'clock on a Friday morning) he was, at the very least, "on call." In this regard, see *Ocean Accident and Guarantee Corp. v. Pallero,* 66 Colo. 190, 180 Pac. 95. There a watchman at a mine was killed while blasting tree stumps to obtain wood for fuel to heat his cabin and cook his food. In holding that such an accident arose out of and within the scope of his employment, this Court said:

"Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting

himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure a drink, refreshments, food, or fresh air, or to rest in the shade."

And, in this same connection, see also *State Compensation Insurance Fund v. Industrial Commission,* 98 Colo. 563, 58 P. (2d) 759. There an employee, as a condition of his employment at a mine, was obliged to room and board in a bunkhouse furnished by his employer. Under such circumstances his death from injuries incurred when the sleeping quarters burned was held to be the result of an accident arising out of and in the course of his employment, notwithstanding the fact that the employee paid his employer for his board and room.

For the reasons set forth, we now hold that there is sufficient competent evidence to support the finding of the Commission that the accident which caused Pardoe's death arose out of and in the course of the particular terms of his employment with Game and Fish. Accordingly, the judgment is affirmed.

MR. JUSTICE FRANTZ not participating.