No. 20848.

Maurice F. Murphey, d/b/a Murphey Roofing, et al., *v.* Lucy Marquez, etc., et al.

(393 P.2d 553)

Decided June 8, 1964.    Rehearing denied July 20, 1964.

Mr. HAROLD CLARK THOMPSON, Mr. ALIOUS ROCKETT, Mr. FRED B. DUDLEY, for plaintiffs in error Maurice F. Murphey, d/b/a Murphey Roofing, and State Compensation Insurance Fund.

Mr. JAMES J. DELANEY, Mr. EUGENE F. COSTELLO, Mr. DAVID L. KOFOED, for defendant in error Lucy Marquez;

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*In Department.*

Opinion by MR. JUSTICE MOORE.

THIS is a workmen's compensation case in which the employer and the state compensation fund seek review of the judgment of the district court by which it upheld

an award of benefits to the defendants in error following the accidental death of Joe T. Marquez.

Marquez, a journeyman roofer employed by Maurice F. Murphey, died on December 14, 1960, as a result of a gunshot wound incurred as he was removing a shotgun from the roof of the Armour Packing Plant located in the stockyards area of Denver. Murphey had contracted to repair the roof and Marquez was one of the men engaged in the work. The claimants before the Industrial Commission are the wife and children of said deceased. It is admitted that the shotgun was not needed or used in the job of repairing the packing house roof. On the day of the accident two shotguns were on the roof, each of which was owned by the foreman in charge of the repair work. The foreman testified that the guns were brought on the job to be used in shooting at pigeons which infested the area, which shooting was done "on their own time" such as before beginning work or during the lunch hour. The shooting activity had never taken place on any other job, but the guns were taken on the Armour plant roof three times. They had never been fired in the presence of the employer. He testified that on one occasion while the work was going on he "saw two guns with the lunch pails and the coats, against the stair of the staircase." With reference to the use to which the guns were put he testified: "I didn't inquire. I didn't ask. There's a possibility that having the guns, you wouldn't leave them in the stockyards. You'd take them with you."

The workmen had finished the job at about 4:30 P.M. on December 14, 1960. The foreman had told the other two workmen to go down so that he could lower the equipment by means of a pulley and rope by which it could be lowered to the ground. Marquez asked the foreman if he, the deceased, should lower the guns down the rope or carry them down. The foreman replied, "Make it easy on yourself." The guns had been brought up and down the ladder before by the men.

There was a "fire wall" which extended about four feet above the roof level which it was necessary to cross before descending the ladder. When Marquez attempted to climb over this wall with a gun it is apparent that the gun discharged and he was killed instantly. His body was found on the edge of the roof near the point where the descending ladder projected above the roof level. The gun fell to the ledge of the roof of the floor beneath, which was the fourth floor of the building. The fifth floor area was the top floor of the building and it was recessed back from the wall enclosing the first four floors, leaving a ledge around the recessed area.

The Referee's order entered on June 22, 1961, contained the following, inter alia:

"Respondents deny that deceased's death was the direct or proximate result of his employment as a roofer and allege affirmatively that the shooting of pigeons was not the ordinary and regular work of a roofer; that, while the death occurred during the hours of his employment, the same did not arise out of his employment.

"Further facts in this case are that the foreman and the deceased had previously shot pigeons during their lunch hour, on their own time, and had taken guns onto the roof on other occasions. However, there is no showing that their employer was aware of the practice of carrying guns or that the employer had condoned such practice or permitted the use of guns in connection with their work.'

"The Referee is mindful of the plight in which the widow and minor dependent children now find themselves and of the beneficent purposes of the Workmen's Compensation Act. However much sympathy there may be for the widow, he believes and so finds that the deceased's death did not arise out of his employment and is beyond the scope of the Workmen's Compensation law in its most liberal construction.

"IT IS, THEREFORE, ORDERED: That the widow's claim for death benefits on behalf of herself and the

minor dependent children should be and are hereby denied and dismissed for the reasons hereinabove stated."

On January 3, 1962, the Referee's order was approved by the Industrial Commission.

On rehearing, the Commission "having reviewed its entire file" and upon "mature consideration" thereof, reversed its former order and entered a "Supplemental Award and Findings of Fact and Award" which, inter alia, contained the following:

"That decedent and his fellow workers were unable to continuously work at their appointed employment tasks because of the inclement weather; that decedent and his fellow employees performed tasks which required more than ordinary skill not possessed by persons in general; that decedent's employer delegated completion of assigned work tasks to a foreman who required no immediate supervision; that said employer impliedly charged his foreman with taking adequate means to keep decedent and other workmen together as a common working unit; that because of inclement weather, decedent and his fellow workmen were restless with their chosen job inasmuch as they received no "stand-by pay"; that their foreman in performance of his delegated duties supplied guns from his possession for use by these employees and himself in recreational pursuits while waiting to perform their assigned work tasks; that it was well known to respondent employer that decedent, his fellow employees and their foreman were using guns to shoot pigeons alighting on premises where they performed their work task when these men were able to work; that when weather was clement, these workmen promptly engaged in pursuit of their technical work skills to achieve objective of their employer; that because of recreation afforded them, these workmen were available to carry out tasks assigned by their employer; that use of these guns for recreational purposes became a part of their work task and served to further business

interests of their employer by keeping employees assembled for work during clement weather; that decedent was directed by his foreman to remove the guns from their work area at the same time that he removed certain work tools; that removal of these guns and tools, by instructions of the foreman, constituted an order of the employer through his delegated authority; that while removing these guns from work area, the decedent was killed by an accidental gunshot; that his death arose out of and in the course of his employment; that decedent left surviving his wife, Lucy Marquez, with whom he was living at time of his death; that decedent also left surviving a daughter, Barbara Marquez, born April 16, 1949; a daughter, Patricia Marquez, born June 29, 1952; a daughter, Cindy Marquez, born January 2, 1957; and one child in being but yet unborn at the date of hearing; that funeral expense in the amount of $643.50 has heretofore been paid by the widow, Lucy Marquez, for interment of decedent."

The question we are called upon to determine is whether, under the disputed facts disclosed by this record, the death of Marquez was the result of an accident arising out of and in the course of his employment as a roofer.

Under some circumstances injuries sustained by employees while engaged in recreational activities are compensable under the Workmen's Compensation Law. Whether such activities are within the course of the employment depends upon the existence of certain factual essentials. As stated by Larson in his Workmen's Compensation Law, Sec. 22:

"Recreational or social activities are within the course of employment when

"(a) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

"(b) The employer, by expressly or impliedly requiring participation, or by making the activity part of the

services of an employee, brings the activity within the orbit of the employment; or

" (c) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."

The above tests were quoted with approval in the case of *Lindsay v. Public Service Company of Colorado*, 146 Colo. 579, 362 P.2d 407.

None of the above quoted essentials are to be found in the instant case. The findings of the Commission which might be considered to come within some of these tests are wholly without support in the evidence.

The judgment is reversed and the cause remanded with directions to order the Commission to vacate the award and to dismiss the claim.

MR. CHIEF JUSTICE MCWILLIAMS and MR. JUSTICE SUTTON concur.