## No. 23435.

CITY AND COUNTY OF DENVER, AND STATE COMPENSATION
INSURANCE FUND *v.* BENJAMIN M. LEE, III, AND INDUS-
TRIAL COMMISSION OF COLORADO.
(450 P.2d 352)

Decided February 17, 1969.

ALIOUS ROCKETT, FRANCIS L. BURY, FEAY BURTON SMITH, JR., for plaintiffs in error.

BERMAN, LILLY, FRIEDRICHS & YOUNG, J. BAYARD YOUNG, for defendant in error Benjamin M. Lee, III.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*In Department.*

.. Opinion by MR. JUSTICE GROVES.

THIS is a workmen's compensation case in which the defendant in error Lee was the claimant. Claimant, a police officer, sustained a back injury while playing on the Denver Police Department basketball team, and the question is whether he was then within the scope of his employment. The Industrial Commission found that he was and the district court affirmed this determination. We also affirm.

The Denver Police Protective Association (here called the "association") was a sponsor of the basketball team upon which claimant was a member. The association was and is composed entirely of members of the Denver police force. Membership in the association is voluntary and 90% to 95% of the police officers belong to it. It is incorporated and has as its purpose to promote in various ways matters for the benefit of the police department and its members. The association and the police

department are completely separate organizations. The Chief of Police testified that the reason for linking the basketball team with the association was that the latter provided the funds necessary to pay for the activities of the team. He further testified that the police department was cosponsor of the team and that the practices of, and the games played by, the team were athletic events approved by him. At the time of the claimant's injury the following regulation of the Denver Police Department was in effect:

"Officers participating on an approved athletic team or other group of recreational activity under the name of the Denver Police Department shall be considered on duty and subject to the rulings and discipline of the Chief of Police or other officers delegated to act as coaches or managers."

Other testimony given in support of the claim was to the following effect: Participation in this athletic endeavor benefits the police department in that it tends to keep the participants physically fit and creates good public relations. When officers were scheduled to be on duty at the time of a game, they were permitted to take the time off necessary for participation in the game without any penalty or deduction in pay. Other members of this basketball team, who were injured during games, had been compensated under the Workmen's Compensation Act. In this particular instance the Police Pension Board awarded claimant's pension "bank" with the days he missed because of the injury, *i.e.*, this was treated as if he had been injured on duty and in the course of his employment. Usually officers on duty were provided with police department transportation to and from games held in Denver.

In opposition to the claim the State Compensation Insurance Fund has urged consideration of the following facts: The game was not played on police department premises. While claimant had been permitted to play at other times while scheduled for duty, at the time of

the injury he was not so scheduled. While off duty, he furnished his own transportation to and from the games played in Denver. The financing of the team was contributed by the association. While in other years the words, "Denver Police Department," or a similar designation were on the players' uniforms, no lettering was on the uniforms during the season in which the accident occurred. Only twelve out of over eight hundred members of the police department were members of the basketball team. Engaging in the activity was entirely voluntary.

 The Fund has urged upon us strongly that under *Industrial Commission v. Day*, 107 Colo. 332, 111 P.2d 1061, we should rule as a matter of law that claimant was not acting within the scope of his employment at the time of the injury. In that case a Denver police officer was accidentally shot by another officer at a turkey shoot which was sponsored by the association. The Industrial Commission found the accident did not arise in the course of the officer's employment. While some of the language in *Day* lends support to the position of the Fund, we find the following in that opinion significant:

" 'If the testimony * * * was such that honest men fairly considering it might arrive at contrary conclusions, then an issue of fact was thereby presented and the finding of the commission on that issue was binding on the district court in its subsequent hearing of the case, and binds us on review.' *Regal Coal Co. v. Jackvich*, 105 Colo. 479, 483, 99 P.(2d) 196. * * * Did this accident arise out of [claimant's] employment by the city as a police officer? We must answer that when the commission said 'No,' it was supported by the record."

While the Fund regards *Day* as controlling and sufficient without further authority, it also has called our attention to *Lindsay v. Public Service Company of Colorado*, 146 Colo. 579, 362 P.2d 407. That case involved an injury and resulting death to an employee while play-

ing on a softball team financed by Public Service Company and composed entirely of that company's employees. There the Industrial Commission found that the employee was not acting within the scope of his employment and this was affirmed by the district court and here. In the instant case we have the opposite situation in which the Industrial Commission found that the claimant was acting within the scope of his employment.

■ In discussing the particular area here involved, Professor Larson, in his authoritative work entitled "The Law of Workmen's Compensation,'" sets forth several variables which will determine by their presence or absence whether a particular recreational activity is within the scope of employment: Whether the activity occurred during working hours; whether it was on or off the employer's premises; whether participation was required; whether the employer took the initiative in sponsoring or organizing the team; whether the employer made contributions to the team; and whether the employer derived benefit from the team. Larson, *supra*, § 22, p. 349 *et seq.* In addition, other factors may be present which indicate whether the employer is sufficiently close to the activity to identify with it and make it incidental to employment.

■■ We think there are enough elements to support the conclusion of the Industrial Commission. While the claimant was not injured during his actual working hours, it is significant that all players, who were "on shift" at the time of the game, were playing "on duty." Patrolmen, such as claimant, worked one of three shifts for a full month and then alternated to the next shift. If claimant had been on the 3:00 p.m.-11:00 p.m. shift at the time, he would have been playing during working hours.

■ We do not believe that we should disregard the testimony of the police chief that this athletic activity was for the benefit of the police department. While the Fund would interpret *Lindsay* to indicate otherwise, we

think this benefit to the police department is one of the factors properly to be considered.

 A regulation cannot make that which is clearly not incident to employment fall within the course of employment. *Industrial Commission v. Ahren,* 119 Ohio St. 41, 162 N.E. 272. However, the above quoted regulation supports the allowance of claimant's claim. The cosponsorship by the Denver Police Department is an important element, as are the facts that participants during duty hours received full pay and police transportation to and from the games. There is the further supporting evidence that members of the team were advised at the beginning of each season that they were to be considered on duty when playing and that this was a police department activity. That the Police Pension Board made its award as above mentioned is some indication of the intent of the employer.

All these factors are not only sufficient to distinguish this case from *Day* and *Lindsay,* but also to support the determination of the Industrial Commission.

Judgment affirmed.

MR. JUSTICE DAY, MR. JUSTICE HODGES and MR. JUSTICE KELLEY concur.