**Michael R. NADEAU**

v.

**TOWN OF SOUTH BERWICK and Northern Assurance Co.**

Supreme Judicial Court of Maine.

March 21, 1980.

Bruce A. Whitney, South Berwick (orally), for plaintiff.

Norman & Hanson by Robert F. Hanson, Portland (orally), for defendants.

Before McKUSICK, C. J., and GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

McKUSICK, Chief Justice.

Petitioner Michael Nadeau appeals from a pro forma decree of the Superior Court (York County) entered upon a decision of the Workers' Compensation Commission denying his petition for compensation. Nadeau, a member of the volunteer fire department of the town of South Berwick, broke his leg while participating as a member of the department's "muster team" in a "firemen's field day" competition held at Kennebunk. The commissioner held that such an injury neither "arose out of nor in the course of" his employment with the department and was therefore not compensable. We disagree and accordingly sustain the appeal.

At the time of his injury, 19-year-old Nadeau had been a member of the fire department for eleven months and was also a full-time employee with the South Berwick Shoe Company. In the spring of 1978 Nadeau successfully competed against some ten other firemen for one of the six positions on the muster team. From June through September, the muster team was to participate almost every weekend in "firemen's musters" or "firemen's field days," in which nearby fire departments from Maine and New Hampshire competed for trophies and money prizes in such events as the dry hose, wet hose, and ladder contests, and a regular "mystery event," the nature of which was not announced in advance. Although participation on the South Berwick team was not mandatory for any individual firefighter, the department did require that there be a team, and the team's attendance at each muster day was compulsory. Also, the six members chosen each spring remained together as a unit throughout the summer. South Berwick has had a muster team since at least 1914.

When a muster day is held, the South Berwick team, in uniform, rides on its own fire truck to the host town where a parade of visiting fire trucks first takes place. The team is "on call" by radio so that if a serious fire broke out in South Berwick, the team would be called back.[1] South Ber-

---

1. Normally, for each fire at which a South Berwick volunteer fails to appear, a fine of one    dollar is levied against him, to be divided among those men who do show up. However,

wick's fire chief testified that the muster events benefit the team members and the fire department in that the participants, usually the younger firemen, gain necessary experience in using fire equipment—such as hooking up a fire hose to a hydrant, putting on a hose nozzle, placing fire ladders, directing streams of water, and wearing complete "multigear outfits" with "hot air packs." All the equipment used by the team comes from the department's own fire truck and is the same as that used in fighting actual fires.

Nadeau was injured during the "mystery event" chosen, as is the custom, by the host department, in this instance the Kennebunk fire department, at their muster day held on July 16, 1978. The last event that day required five team members, each carrying a coffee can, to run up a ladder and slide down a slide; while each was sliding down, the sixth team member, standing on the ground holding a hose, tried to direct as much water as possible into his can. Once each can-holder hit the ground, he ran to a pail, dumped in his water, and then repeated the process, all for three minutes. This particular mystery event was unusual in not dealing with a simulated fire situation. During the event, Nadeau broke his leg when he dropped his can at the top of the ladder and jumped to the ground, hitting a supporting two-by-four on the way down.

In deciding that Nadeau's injury did not arise out of and in the course of his employment, the commissioner made no further findings of fact, and neither party sought such findings under 39 M.R.S.A. § 99 (Supp. 1979). In these circumstances we review the commissioner's decision

> by treating him as having made whatever factual determinations could, in accordance with correct legal concepts, support his ultimate decision, and we inquire whether on the evidence such factual determinations must be held clearly erroneous.

if a small fire occurs while the muster team is away at a competition, then each team member is treated as if present at the fire. Each volun-

*Gorrie v. Elliott Jordan & Son, Inc.,* Me., 408 A.2d 1008, 1011 (1979). *Cf. Atlantic Acoustical & Insulation Co. v. Moreira,* Me., 348 A.2d 263, 265–66 (1975) (absent request for findings of fact pursuant to M.R.Civ.P. 52(a), Law Court assumes trial judge found for "appellee on all factual issues necessarily involved in the decision" and applies a "clearly erroneous" test on review). In the case at bar, there is no support in the record for the facts that we must assume were found by the commissioner; those assumed findings of fact are clearly erroneous. The evidentiary facts developed in the hearing before the commissioner were essentially undisputed, and they require the conclusion that petitioner's injury did indeed arise out of and in the course of his employment by the town of South Berwick as a volunteer fireman.

We have recently defined the twin statutory requirements for eligibility for workers' compensation, 39 M.R.S.A. § 51 (1978), as follows:

> The "arising out of" factor means that "the injury, in some proximate way, had its origin, its source, its cause in the employment," while the concept of an injury "in the course of" the employment "refers to time, place and circumstances."

*Blackman v. Harris Baking Co.,* Me., 407 A.2d 21, 23 (1979), quoting *Gilbert v. Maheux,* Me., 391 A.2d 1203, 1205 (1978). *See also Moreau v. Zayre Corp.,* Me., 408 A.2d 1289, 1292 (1979). Our decision in *Boyce's Case,* 146 Me. 335, 341–42, 81 A.2d 670, 673–74 (1951), further amplified the elements of each requirement:

> To arise out of the employment the injury must have been due to a risk of the employment. To occur in the course of the employment the injury must have been received while the employee was carrying on the work which he was called upon to perform, or doing some act incidental thereto. . . . There must be some causal connection between the conditions under which the employee worked

teer fireman is paid an annual lump sum amount—in Nadeau's case at the time of his injury, $125.00.

and the injury which he received. If the injury is sustained by reason of some cause that has no relation to the employment it does not arise out of it. . . . The accident to be compensable must occur within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties, or engaged in doing something incidental thereto.

Accord, Metcalf v. Marine Colloids, Inc., Me., 285 A.2d 367, 369 (1972).

In Metcalf an employee who was injured while engaging in a "frolic" was denied compensation. More pertinent to the case at bar are the situations recently examined by this court in Blackman, supra, and Moreau, supra. In Blackman, 407 A.2d at 23, the employee on a Wednesday, his day off, was injured in a single vehicle accident when driving his employer's van to return home from a round of golf. We upheld the denial of compensation on the ground that the employer did not benefit from Blackman's use of the vehicle for his personal activity. On the other hand, in Moreau, where an employee was injured while returning from medical treatment, we held that if the medical treatment had been for an earlier compensable injury, the second injury occurred "in the course of" employment because the employee was "engaged in an activity incidental to the employment at a place where she reasonably might be." Moreau v. Zayre Corp., supra at 1292–93.

Here, Nadeau was engaged in an activity incidental to his employment that benefited his employer. Unlike the petitioner in Blackman, Nadeau and his teammates were not involved merely in an activity for their personal benefit. Rather, the town of South Berwick supplied the fire truck, equipment, and uniforms so that petitioner and his teammates could improve their fire-fighting skills as individuals and as a team, as well as possibly win a trophy for the department. If participation in the muster days is not of benefit to the South Berwick fire department, one might well wonder about the propriety of this extensive and repeated use of public property. Additionally, Nadeau's position as a fireman was not limited by time or place, because he had a duty to respond to fires at any hour of any day and anywhere the South Berwick department should direct.

Like the petitioner in Moreau, Nadeau's participation in muster day competition was an activity reasonably incidental to his employment as a fireman. Even though the particular event in which Nadeau was injured did not directly involve specific fire-fighting skills, the muster day as a whole (including the other, regularly scheduled events) tested Nadeau's ability to use his employer's equipment in a skillful manner. The nature of the "mystery event" selected by the host fire department was beyond Nadeau's control; he was required to participate in all the activities of that particular muster day.

Our conclusion that petitioner's injury is compensable is supported by the treatment of similar cases by the majority of other jurisdictions. As relevant here three tests have been developed for compensability of injuries incurred in an employee's recreational or social activities. The first test is the extent to which the employer has sponsored, controlled, or participated in the activity. See Annot., 47 A.L.R.3d 566, 571 (1973). The other two tests have been set forth by Professor Larson as follows:

Recreational or social activities are within the course of employment when

. . . . .

(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

1A A. Larson, The Law of Workmen's Compensation § 22.00, at 5–71 (1979).

Applying these tests, courts have found injuries to "arise out of and [be] in the

course of" employment when sustained during company picnics, *Sica v. Retail Credit Co.*, 245 Md. 606, 227 A.2d 33 (1967), *Ricciardi v. Damar Products Co.*, 45 N.J. 54, 211 A.2d 347 (1965), *Kohlmayer v. Keller*, 24 Ohio St.2d 10, 263 N.E.2d 231 (1970), and *Feaster v. S. K. Kelso & Sons*, 22 Pa. Cmwlth. 123, 347 A.2d 521 (1975); company softball games, *Illinois Bell Tel. Co. v. Industrial Comm'n*, 61 Ill.2d 139, 334 N.E.2d 136 (1975); company basketball games, *City and County of Denver v. Lee*, 168 Colo. 208, 450 P.2d 352 (1969); fishing trips, *Linderman v. Cownie Furs*, 234 Iowa 708, 13 N.W.2d 677 (1944); and golf outings, *Lybrand, Ross Bros. & Montgomery v. Industrial Comm'n*, 36 Ill.2d 410, 223 N.E.2d 150 (1967). Professor Larson has summarized the lessons to be learned from these cases:

> In one sense, when the employer plans a regular outing and urges his employees to go to a specified place for the purpose, continuing their pay while there, it may be said that both the time and space limits of the employment are expanded to picnic-day at the picnic-grounds. When to all this is added evidence that the employer is deriving benefit from the outing, the combination should easily suffice to bring it within the scope of employment.

Larson, *supra*, § 22.23 at 5-91.

The case at bar is well within the scope of compensability outlined by Professor Larson and the recreational or social activity cases. Here, unlike picnics or softball games, the nature of activity done by the muster team during competition is the same as the activity done by a team of firefighters during an actual fire. The muster events are a form of training for the coordination and development of individual and teamwork skills, morale, and enthusiasm. The added element of competition does not detract from, but rather enhances such training by forcing Nadeau and his teammates to work together under pressure, as at a real fire. Competition against other, neighboring fire departments also provides the South Berwick team with the opportunity to meet other firefighters, to learn new techniques, and to develop a relationship with those who may be called upon in the future to aid the South Berwick department in fighting major fires.

The town of South Berwick directly sponsored, encouraged, and benefited from Nadeau's participation in the muster day activity. Because petitioner's injury was sustained in the course of an activity incidental to firefighting, and arose out of an activity causally connected to his employment, the entry is:

Appeal sustained.

Pro forma decree of the Superior Court vacated.

Remanded to the Workers' Compensation Commission for proceedings consistent with the opinion herein.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00 together with his reasonable out-of-pocket expenses for this appeal.

WERNICK, J., did not sit.