John E. Kemp's Case.

Suffolk.  April 8, 1982. — July 13, 1982.

Present: Hennessey, C.J., Wilkins, Liacos, Nolan, & Lynch, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Recreational
activities, Procedure:  recommittal to Industrial Accident Board.

An employee's after-work injury sustained on a public playground in the
   course of a softball game in which there was no employer compulsion
   to participate, and played in a league sponsored by the city of Boston,
   was not an injury "arising out of and in the course of his employment,"
   and thus was not compensable under G. L. c. 152, § 26, simply be-
   cause the employer provided each participant with a shirt and a hat
   having identifying symbols and allowed each player to change his
   clothes on its premises. [732-734]

Certification to the Superior Court of a decision by the
Industrial Accident Board.

The case was heard by *Goldblatt,* J., a District Court
judge sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*William F. Joy, Jr.,* for the employer.

*Alan S. Pierce* for the employee.

Wilkins, J.  The claimant, John E. Kemp, then an em-
ployee of Westinghouse Electric Supply Company (Westing-
house), broke his left collar bone while playing on a softball
team competing under the Westinghouse name.  The question
is whether, in the circumstances of his case, Kemp's injury was
one "arising out of and in the course of his employment,"
and thus compensable under the workers' compensation
act.  G. L. c. 152, § 26, as amended through St. 1973,
c. 855, § 1.  A single member of the Industrial Accident
Board decided that the injury was compensable, and the re-
viewing board agreed.  A judge sitting in the Superior Court,

without written opinion, affirmed the board's determination, and a divided Appeals Court panel affirmed the judgment entered in the Superior Court. *Kemp's Case*, 12 Mass. App. Ct. 964 (1981).[1] We conclude that the single member's findings do not support his conclusion that the injury arose out of and in the course of Kemp's employment. We also conclude that no further findings that could be made on the evidence would warrant such a conclusion and leave it to the board in its discretion to decide whether to take further evidence in light of the principles set forth in this opinion.

We start with the facts as found by the single member. On May 28, 1971, the date of his injury, Kemp was approximately thirty-six years old and had been employed by Westinghouse as a general warehouseman for approximately eighteen years. Westinghouse furnished "uniforms" to the softball team. Kemp's testimony shows that the "uniform" consisted of a softball jersey with the name "Westinghouse" and a hat with a "W." Employees on the team were allowed to change their clothes on Westinghouse's premises. The single member found that "apparently" the results of games were sometimes published on a company bulletin board. The games were not played on Westinghouse's premises but rather on public softball fields. Westinghouse did not compel participation. Westinghouse did not participate actively in the activities of the softball team.[2] The single member did not find when the games were played, but on Kemp's testimony it seems clear that the games were played

---

[1] The Appeals Court's rescript opinion indicates that a majority of the three judge panel were of the opinion that the single member's findings of subsidiary facts were adequate to support the board's conclusion. *Id.* at 965. Impliedly, one member of the panel must have decided that the subsidiary findings were either inadequate or did not support the board's conclusion, or both.

[2] The single member referred, rather unclearly, to "lack of management's [management?] activity of the employer." It seems undisputed from Kemp's testimony that employees provided their own transportation and that the employer did not participate in or encourage the activity beyond what has been recited above.

after work, "usually in the evenings." It also appears from Kemp's testimony, but not from the single member's limited findings, that the team played in a league sponsored by the city of Boston.

There was a conflict in the testimony, unresolved by the single member, whether all members of the Westinghouse team were Westinghouse employees. We shall assume they were.

The single member, noting the factors discussed in *Moore's Case*, 330 Mass. 1 (1953), concluded that the activity was recreational; that Westinghouse encouraged the activity by purchasing uniforms for the employees and by providing clothes-changing facilities; and that Westinghouse "received direct benefits through better employer-employee relations, as well as advertising benefits through the presence of Westinghouse trademarks or logos on the uniform shirts and hats."[3]

We conclude that Kemp's after-work injury sustained on a public playground in the course of a softball game in which there was no employer compulsion to participate, and played in a league sponsored by the city of Boston, was not compensable simply because Westinghouse provided each participant with a shirt and a hat having identifying symbols and allowed each player to change his clothes on its premises. When an employee's recreational activity (1) occurs after work and off the employer's premises, (2) is not the result of compulsion or pressure by the employer, and (3) is not sponsored by the employer, it is obvious that the case for compensation is weakened. In providing the shirt and hat, Westinghouse was giving what the Appeals Court described as "not very significant employer encouragement of the team" (*Kemp's Case*, 12 Mass. App. Ct. 964, 965 [1981]) and what, standing alone, is "ordinarily not enough to meet the burden of proof" (1A A. Larson, Workmen's Compensation § 22.24, at 5-109 [1979]). The inferred promotional

---

[3] There was no evidence of any such benefits to Westinghouse apart from the inference that might be drawn from the existence of the team and its employer-provided shirts and hats.

benefit to Westinghouse constituted what the Appeals Court described as "some vague tendency to improve employer-employee relations and to result in advertising" (*Kemp's Case, supra* at 965), and what Professor Larson has characterized as having incidental advertising value, which "may not be enough, even when combined with evidence of some employer subsidy" (1A A. Larson, *supra* at 5-110 -5-111).

Resolution of the question whether an employee's injury sustained during recreational activity is compensable requires an analysis of the facts of each case. In *Moore's Case*, 330 Mass. 1, 4 (1953), involving an injury sustained at an office Christmas party, this court noted certain factors for "determining whether the employment and the recreation are related with sufficient closeness to warrant an award." We listed (1) the customary nature of the activity, (2) the employer's encouragement or subsidization of the activity, (3) the extent to which the employer managed or directed the recreational enterprise, (4) the presence of substantial pressure or actual compulsion on the employee to participate, and (5) the fact that the employer expects or receives a benefit from the employees' participation in the activity, such as by way of improved employer-employee relationships or through advertising the employer's business. *Id.* at 4-5. Except for employer compulsion, none of these factors was regarded as likely to be determinative of the issue. *Id.* at 5. Indeed, we said that there could be other relevant factors. *Id.* at 5. Certainly, the time and place of the recreational activity could be relevant.[4]

The single member acknowledged the lack of compulsion and the limited involvement of Westinghouse in the management and operation of the team as militating against the recreational activity being work-related. He concluded, however, as noted above, that compensation was payable

---

[4] Other Massachusetts cases involving injuries sustained during recreational activities are not instructive in deciding the issue before us. See *Landry's Case*, 346 Mass. 762 (1963); *Messersmith's Case*, 340 Mass. 117 (1959); *McManus's Case*, 289 Mass. 65 (1935).

because Westinghouse encouraged the games by purchasing uniforms and because Westinghouse received benefits through advertising and better employer-employee relations. We hold that Westinghouse's incidental support of the softball team and any incidental benefit to it from that activity, as a matter of law, do not warrant a finding that Kemp's injury arose out of and in the course of his employment.

Westinghouse cites cases in which compensation was denied on facts arguably as favorable to the award of compensation as the facts in this case. See *Lindsay* v. *Public Serv. Co.*, 146 Colo. 579 (1961) (no compensation for an injury sustained by a member of a softball team for which the employer provided equipment and uniforms carrying the company symbol);[5] *Jackson* v. *Cowden Mfg. Co.*, 578 S.W.2d 259 (Ky. App. 1978) (no compensation for injury sustained in an industrial league basketball game, where the employer paid the annual entry fee and certified that each player was an employee, and the employer had formerly purchased uniforms, and in the year of the injury had reimbursed members for uniforms purchased by them);[6] *Wilson* v. *General Motors Corp.*, 298 N.Y. 468 (1949) (4-3 decision) (compensation denied, as a matter of law, where employee was injured in a softball game while playing, after hours and off the premises, on a team for which the employer provided equipment and allowed conferences relating to the contests on company time on the company's premises).[7] For a recent

---

[5] The employer's sponsorship was considerably greater in the *Lindsay* case than here. The company paid for the use of the field and paid all expenses pursuant to a budget approved by it. *Id.* at 580-581. The employer also allowed company time to be used for various administrative aspects of the softball program. *Id.* at 581. However, the softball team played in an intracompany league, and any advertising value was negligible. The benefit to the company consisted entirely of the improvement of employee morale. *Id.* at 581-582.

[6] There the court ruled that the compensation board was wrong as a matter of law in awarding compensation. *Id.* at 266. Although in the *Jackson* case the employer's involvement was greater than in the case before us, the uniforms did not bear the employer's name.

[7] Professor Larson has described the *Wilson* case as marking "the frontier area in the expanding coverage of recreation cases." 1A A. Larson, *supra*,

case denying compensation as a matter of law, see *Smith* v. *Union Bleachery/Cone Mills,* 276 S.C. 454 (1981) (3-2 decision) (employer provided uniforms having the employer's name, provided some equipment, found a league for the team, paid the softball league entry fee, renovated and provided a practice field, allowed organizational meetings on company time, and allowed recruiting posters to be put up on company property).[8]

Kemp, in turn, has cited authority tending in his favor, but in which the factors favoring compensation were stronger than those he presents. See *Jewel Tea Co.* v. *Industrial Comm'n,* 6 Ill. 2d 304 (1955) (one dissent) (compensation should have been awarded to employee injured playing softball in a company league, where the company provided equipment and T-shirts carrying the company name, awarded trophies, provided an annual dinner, and otherwise encouraged the league in a variety of ways); *Le Bar* v. *Ewald Bros. Dairy,* 217 Minn. 16 (1944) (compensation award upheld where employer furnished equipment and shirts with its name on them, paid league entry fee, provided a year-end banquet, and admitted that it had entered the league to obtain goodwill from the publicity given its

---

§ 22.24 at 5-111. The employees, playing in a company league, wore uniforms with the letters "M. & A.," standing for Motor and Axle Division. *Wilson* v. *General Motors Corp., supra* at 471. Professor Larson comments on the case as follows: "The facts supporting work-connection have been reduced in this case almost to the minimum that might [allow] the basis for a claim; and that minimum has just failed to make the grade. One feels that a slight strengthening of the facts could easily have changed the narrow margin of defeat into one of success, while a slight weakening of the facts would have left almost nothing on which to found a claim at all." 1A A. Larson, *supra,* § 22.24, at 5-112. Compare *Tedesco* v. *General Electric Co.,* 305 N.Y. 544 (1953) (on-premises injury compensable where sustained while playing softball for company subsidized and controlled team), with *Jablonski* v. *General Motors Acceptance Corp.,* 22 App. Div. 2d 724 (N.Y. 1964) (compensation denied, although employer encouraged participation in bowling league and derived benefits from having its initials on employer-provided bowling shirts and from association of its employees with General Motors dealers).

[8] The strong dissent in this case makes a persuasive argument that the injury was compensable.

dairy business); *Complitano* v. *Steel & Alloy Tank Co.*, 63 N.J. Super. 444 (1960) (2-1 decision denying compensation), rev'd 34 N.J. 300 (1961) (5-2 decision awarding compensation) (compensation should have been awarded where the employee was injured playing softball on a company team because the employer paid a league entrance fee, supplied equipment and uniforms bearing the company name, displayed in the company office a large trophy awarded for winning the league championship, and rewarded the winning team with World Series tickets, expenses, and dinner. Also, games were shown to be attended by the public and results of games received newspaper publicity). For a recent case recognizing the compensability of an injury sustained by an employee while engaged in recreational activity, see *Wallace* v. *Shade Tobacco Growers Agricultural Ass'n*, 642 F.2d 17 (1st Cir. 1981) (Massachusetts law) (injury compensable where young summer employee drowned while swimming in an area for which his employer arranged and provided supervisory staff, transportation, and equipment for use during swimming periods).

It seems clear that the trend of the cases over the years has been to broaden the reach of the phrase "arising out of and in the course of . . . employment." G. L. c. 152, § 26. But the words must have some meaning. Westinghouse's involvement with the operation of the softball team on which Kemp played just does not have a sufficient connection with his employment to warrant the award of compensation. The case for employer benefit and employer involvement is not made on this record. Any benefit to Westinghouse was at best inferential and insignificant. Westinghouse's involvement was incidental. This is not a case in which the employer was concerned with its "public relations and maintenance of the corporate image." See L. Locke, Workmen's Compensation § 246, at 295 (1981). The great weight of authority, one could fairly say all pertinent authority, points to the denial of compensation in this case.

The judgment of the Superior Court is reversed. Judgment shall be entered remanding this case to the Industrial

Accident Board for further action in light of this opinion. In view of the governing principles now stated in this opinion, it is within the board's discretion to take further evidence in this proceeding.

*So ordered.*