BOYCE'S CASE

(JAMES A. BOYCE *vs.* MAINE PUBLIC SERVICE CO. AND LIBERTY MUTUAL INSURANCE CO.)

Piscataquis.   Opinion, June 11, 1951.

*Robinson, Richardson and Leddy,* for appellant.

*James E. Mitchell,* for appellee.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J. This case is in the Law Court on appeal from a decree of the Superior Court for Piscataquis County affirming a decision of the Industrial Accident Commission awarding compensation to James A. Boyce as an employee of the Maine Public Service Co.

The petitioner Boyce asked for an award against the Maine Public Service Co. for serious personal injuries by accident arising out of and in the course of his employment, when he fell through a skylight of a camp building at Mooseluk Lake while shoveling snow from the roof on February 15, 1950. The defendant Company claimed that the plaintiff (petitioner) was not employed by it at the time of receiving the injuries, and that in any event the accident did not arise out of and in the course of his employment.

The record fairly shows that James A. Boyce went to work for the Great Northern Paper Company at Mooseluk Lake in the summer of 1948 where the Paper Company was constructing a dam. Boyce did some cooking, worked on a road, and worked on the dam. The dam was completed in the early part of 1949. During the winter of 1948-1949 Boyce looked after the property for the Paper Company.

The activities of the Great Northern Paper Company ceased in the fall of 1949, and Boyce expected to be "laid off" and received word that he was going to be, and that the Maine Public Service Co. "would take it over." Then Boyce received word from an official of the Paper Company to take orders from Mr. McGowan of the Service Company.

Mooseluk Lake is so inaccessible that an airplane, or a possible twenty mile walk, is necessary to get in and out. The Service Company had arranged with the Paper Company for the use of some of the water. In order to avoid the requirement of the Service Company for a physical examination of employees, it was more convenient for the Service Company to keep Boyce to tend the dam, and to leave

him where he was with his supplies and on the pay rolls of the Paper Company, rather than to take him out for examination.

Boyce stayed at the Mooseluk Dam at the request of the defendant Service Company. He was indirectly paid by the Service Company, because the Service Company paid his wages to the Paper Company. He attended to raising and lowering the gates of the dam when and as ordered by the defendant Service Company to govern the water supply in the Aroostook river, from which the Service Company obtained some of its power. He would not have been there had it not been for the request of the Service Company. The Paper Company had no work there for him, and gave him no orders to do any work there. The Great Northern Paper Company exercised no control over his work during that winter. Boyce acquiesced in the new employment and accepted the orders and directions of the defendant Service Company.

Boyce lived in an "office camp" which had been built and previously used by the Great Northern Paper Company, and he kept in another building formerly used as a "cook camp and sleeping camp," his tools, axes, saws, salt, kerosene and other materials used by him to keep the dam equipment free of ice to permit use. At the time of his injuries he was attempting to shovel the snow from the roof of the camp where his working utensils were stored. During the previous winter, while this camp was occupied and in use by the Paper Company, he had kept the snow from the roof, acting under instructions from the Paper Company. During the winter of 1949-1950 he received no such instructions from anyone. Boyce chose to keep the salt, kerosene and tools in a camp other than where he ate and slept, and without being instructed he shoveled to protect his materials from a possible falling roof as well as to protect himself.

The Industrial Accident Commission found, and it appears clear to the court that on the evidence it could so find, that the plaintiff petitioner Boyce, in the general employ of the Great Northern Paper Company, was loaned to the defendant Service Company, and submitted to the exclusive direction and control of his special employer, the Service Company. The Commission also found that the work of Boyce, at the time of injury, was entirely for the benefit of the Maine Public Service Company, as the dam would have been entirely closed and no person employed, except for the arrangement between the companies for use of water by the Service Company. The Commission further and also found, that Boyce at the time of his injury was performing an act in furtherance of his special employer's business and that it was incidental to his employment with the Service Company.

The appellant argues that for Boyce to keep a camp roof shoveled to protect his tools, salt and oil, when he had adequate space in the camp where he lived, "is so ridiculous as to defy belief." This contention of the Maine Public Service Company, and its insurance carrier the Liberty Mutual Insurance Co., is well answered by these words of the Commission in its findings:

> "In arriving at a decision of this matter we have considered the time, place and circumstances under which the accident occurred. We believe the injury followed as a natural incident of the employee's work, which he was employed to do. We believe there was a causal connection between the employment and the injury. It arose in the course of the employment because it came about while the workman was doing the duty he was employed to perform. It arose out of the employment because it is apparent to us, upon consideration of all the circumstances, that there was a causal connection between the conditions under which Mr. Boyce was working and the injury which he received.

This employee was engaged to tend a dam. This was in a remote place. He was the only employee. He had tended the dam previously for another employer. He was the type of man who was conscientious in his work. He was in the habit of looking after the property at the dam. He lived in an office building, and kept the materials which he claimed were necessary to perform his work properly at the dam, in another building. He had never been instructed one way or the other, about keeping the snow shoveled off the roofs of the buildings at the dam, by the Maine Public Service Company. The winter before he had been instructed by the owner of the dam and the buildings to keep the cook camp shoveled off, which he did. This was the work he was doing when injured. To protect the tools and materials needed to keep the gates of the dam free of ice, is the reason Boyce advances for shoveling off the roof where they were kept. He had another reason, which seems legitimate, and that was to save himself from injury, so that the roof would not fall in on him, while he was in the cook camp. Mr. McGowan, the employer's agent, who gave Boyce all of his orders, admitted that every man had different ways of doing his work. We do not believe, in a situation of this kind, that an employee must be expressly directed as to the time, manner and extent of doing each particular task. It is our opinion that an employee, situated as Mr. Boyce was, at the dam, would reasonably be expected to use his own discretion, as to how he would perform his duties. This particularly so, in the absence of any orders, contrawise. Boyce had not been forbidden to put his tools and other materials in the cook camp. He had not been forbidden to shovel off the cook camp. It was his responsibility to keep the dam and its gates free of ice. He was not instructed as to what tools or materials to use, or not to use, in doing his work. The fact that Boyce chose to live in the office building, we believe, does not change the situation, but is another instance of an employee using his discretion on the job."

The Workmen's Compensation Act arose out of conditions produced by modern industrial development and is based on the philosophy that industrial accidents are inevitable incidents of industry, and that the burden should be borne by industry rather than by the injured employee. *Bartley* v. *Couture,* 143 Me. 69, *55 Atl. (2nd)* 438. Under the Act, the theory of common law negligence, as the basis of liability, is discarded and a right to compensation is given for injuries incident to the employment. The compensation law substitutes in place of an action which requires proof of the employer's negligence with common law defenses, the right to compensation based on the fact of employment. This obviates uncertainties, delay, expense and possible hardship. It transfers the expense and uncertainty from the worker to the industry, and tends to improve relations between employers and employees by avoiding troublesome litigation. See *Foster* v. *Hotel Company,* 128 Me. 50. A liberal construction rule is imposed by the Legislature. Revised Statutes (1944), Chapter 26, Section 30. The Industrial Accident Commission is the trier of the facts and its findings for or against the claimant are final if there is any evidence on which to base it. When there is competent and probative evidence the decision of the commission, if guided by legal principles, is not subject to review. *Albert's Case,* 142 Me. 33; *Mailman's Case,* 118 Me. 172. The court must accept the findings of fact, if there is competent evidence, but it is not necessarily bound by the reasoning of the commission. *Shaw's Case,* 126 Me. 572. A finding based on speculation or conjecture will not be sustained. Conclusions must be natural and rational. *Syde's Case,* 127 Me. 214.

Whether a servant of one employer has been loaned to another is determined by the circumstances surrounding both the general employment and the special employment. Who controls and directs him and his activities in the new and particular service? Does he continue to be under the control of his general employer, or does he become, for the

time being, subject to the exclusive control and direction of the person to whom he has been loaned? Does the employee himself, know and consent, and does he submit to the direction and control of the new master? The fact that an employee is the general servant of one employer does not, as a matter of law, prevent him from becoming the particular servant of another. It is the general rule that when one lends a servant to another for a particular employment, and the servant is under exclusive direction and control of that other in the particular employment, he must be dealt with as the servant of the one to whom he is loaned. *Torsey's Case*, 130 Me. 65; *Gagnon's Case*, 128 Me. 155, 158; *Wyman* v. *Berry*, 106 Me. 43; *Pease* v. *Gardner*, 113 Me. 264. *Wilbur* v. *Construction Co.*, 109 Me. 521; *Beaulieu* v. *Tremblay*, 130 Me. 51; *Frenyea* v. *Steel Co.*, 132 Me. 271. Consent or acquiescence of the employee to the change of employment may be inferred from the servant's acceptance of or obedience to orders given by the special employer. *Torsey's Case*, 130 Me. 65. The fact that a loaned servant remains on the payroll of his general employer is not decisive of the question of employment. It is a circumstance to be considered. *Chisholm's Case*, 238 Mass. 412.

The Workmen's Compensation Act provides for compensation where the employee receives a personal injury by accident arising out of and in the course of his employment. Revised Statutes (1944), Chapter 26, Section 8. The law is clear, but the application is often difficult. To arise out of the employment the injury must have been due to a risk of the employment. To occur in the course of the employment the injury must have been received while the employee was carrying on the work which he was called upon to perform, or doing some act incidental thereto. The accident may occur in the course of the employment although it may not arise out of it. The compensation depends on the fact that the accident not only takes place in the course of the employment, but also that it arises out of the employment.

*John D. Wheeler's Case,* 131 Me. 91. There must be some causal connection between the conditions under which the employee worked and the injury which he received. If the injury is sustained by reason of some cause that has no relation to the employment it does not arise out of it. *Gouch's Case,* 128 Me. 86; *Mailman's Case,* 118 Me. 172; *Saucier's Case,* 122 Me. 325. The accident to be compensable must occur within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties, or engaged in doing something incidental thereto. He should not be in a place forbidden by the employer. *Fournier's Case,* 120 Me. 236, or in a clearly unsafe place, when the employer has provided a safe one, *Healey's Case,* 124 Me. 145. See also *Dulac* v. *Insurance Co.,* 120 Me. 31, where employee used freight elevator, instead of exit, unknown to employer; *Gray's Case,* 123 Me. 86, where employee injured in a fight; *Washburn's Case,* 123 Me. 402, where employee injured in "horse play;" *Hawkins* v. *Portland Gaslight Co.,* 141 Me. 288, where employee went outside plant and was shot by a crazed soldier; which cases hold that the accident must be due to a risk to which the employee was exposed because of his employment, or because of work incidental thereto. If the accident occurs while the employee is doing what he might reasonably do and at a place where he might reasonably be, it is compensable. See *Westman's Case,* 118 Me. 133, where cook of towboat went from boat at dock to a store for supplies and on return was drowned, and it was held that the injury was traceable to nature of work; *Farwell's Case,* 127 Me. 249, where waitress went to find night watchman and was injured; *Hinckley's Case,* 136 Me. 403, where fireman on steam shovel joined operator at shovel en route to new location, and *Bennett's Case,* 140 Me. 49, where in a production rush the employee vaulted rail instead of walking the ramp. "An injury arises out of the employment if it arises out of the nature, conditions, obligations,

or incidents of the employment; in other words, out of the employment looked at in any of its aspects." *Caswell's Case,* 305 Mass. 500, 502.

In this case where the employee who attended the dam was injured while shoveling snow from the roof of the building, where his tools and materials were kept, there was evidence on which the commission could properly find within the meaning of the Workmen's Compensation Act that he was in the employ of the Maine Public Service Co., and was injured in an accident arising out of and in the course of his employment.

This being an appeal by the employer and the original decision being affirmed, the Law Court orders the allowance of $250 to be paid to the petitioner employee by the defendant Maine Public Service Co. for expenses incurred in the proceedings of this appeal, in accordance with Revised Statutes (1944), Chapter 26, Section 41.

*Appeal dismissed.*

*Decree affirmed.*

*Allowance of $250 ordered to petitioner for expenses of appeal.*