Frederick A. LINDSAY, Jr.

v.

**GREAT NORTHERN PAPER COMPANY.**

Supreme Judicial Court of Maine.

Argued June 2, 1987.
Reargued Sept. 15, 1987.
Decided Oct. 13, 1987.

---

Jonathan Beal, Randall E. Nash (orally), McTeague, Higbee, Libner, Reitman, Macadam & Case, Brunswick, for plaintiff.

John A. Woodcock, Jr. (orally), Mitchell & Stearns, Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

The employee, Frederick Lindsay, seeks review of a decision of the Appellate Division of the Workers' Compensation Commission which reversed a Commission decree awarding him net wages lost because the employer, Great Northern Paper Company, discriminated against him for asserting a claim under the Workers' Compensation Act. We determine that the Commission correctly decided this case, and vacate the decision of the Appellate Division.

On November 10, 1982, Lindsay injured his back in the course of his employment at Great Northern Paper Company in East Millinocket. Owing to his injury, he was unable to work for two months during which he received workers' compensation. When he finally reported to work on January 11, 1983, he was promptly suspended without pay for fourteen days in accordance with Great Northern's "no fault" absenteeism policy.

Great Northern observes a policy of progressive discipline for absenteeism. An employee is permitted four unexcused absences [1] in any given four-month period. If there are five unexcused absences during that four-month period the employee receives an oral warning. If there are five unexcused absences during a subsequent four-month period, the employee receives a written warning. If there are five more unexcused absences during the next four-month period, the employee is suspended without pay for two weeks. When Lindsay injured his back, he had already used up his allotment of unexcused absences. The absence caused by his work-related injury constituted the final unexcused absence necessary to trigger disciplinary suspension without pay.

Lindsay filed a petition asserting that in suspending him without pay because of his absence owing to a work-related injury Great Northern violated 39 M.R.S.A. § 111 (1978) which prohibits employers from discriminating against employees who assert claims under the Workers' Compensation

---

1. Absences are construed as "occurrences" rather than separate days of failure to report for scheduled work each counting as a distinct absence. In other words, an employee who fails to report for two or more consecutive days has only one absence.

Act. After two hearings, the hearing commissioner found that Great Northern's "suspension was rooted substantially and significantly in [Lindsay's] exercising of his rights under the Worker's Compensation Act" and awarded net wages lost. On Great Northern's appeal the Appellate Division reversed. We granted Lindsay's petition for appellate review.

■ In 1983 section 111 [2] of Title 39 provided as follows:

No employee shall be discriminated against by any employer in any way for testifying or asserting any claim under this Act. Any employer who so discriminates against any employee shall be liable to such employee on petition before the commission and hearing before the commission, for all net wages lost suffered by such employee by reason of such discrimination.

With the Act's intended beneficial results and general humanitarian purpose in mind, we have construed the word "claim" as it is used in section 111 in its broad sense as "right." *Delano v. City of South Portland,* 405 A.2d 222, 225–27 (Me.1979). Therefore the phrase "asserting any claim under this Act" refers to any right conferred by the Workers' Compensation Act on the employee, and not merely to the voicing of a demand for benefits by petition or otherwise. *Id.* at 227. Lindsay's assertion of a right not to work while physically incapacitated as a result of a work-related injury constituted a "claim" under the Workers' Compensation Act.

■ Lindsay contends on appeal that Great Northern's "no :fault" absenteeism policy, although facially neutral, when applied to instances where the absenteeism is caused by work-related injury operates in a discriminatory manner to subvert the purposes of the Workers' Compensation Act. We agree with Lindsay that the absenteeism policy unlawfully discriminates against him because it labels his rightful absence because of a work-related injury as an unexcused absence.

■ The Workers' Compensation Act is premised on the recognition that accidents are inevitable incidents of modern industry and that the burden should not be borne by the employee. *Boyce's Case,* 146 Me. 335, 340, 81 A.2d 670, 672–73 (1951). The Act relieves the victims of industrial accidents of the adverse consequences of personal injury and resulting unemployment by shifting the burden from the individual and ultimately to society at large. *Scott's Case,* 117 Me. 436, 444, 104 A. 794, 797 (1918). The Act in effect superimposes on the underlying employment contract a vested right to receive compensation and a fixed obligation to pay it upon the happening of an industrial accident. *Berry v. M.F. Donovan & Sons,* 120 Me. 457, 459, 115 A. 250, 251 (1921); *Gauthier's Case,* 120 Me. 73, 76, 113 A. 28, 30 (1921). That an employee who is injured in the course of his employment has a right not only to compensation but also to time off necessary to complete recovery is implicit in the Act. *Cf. Delano,* 405 A.2d at 227 (right of employee to refuse employment hazardous to his work-related injury is implicit in the Act).

The effect of Great Northern's "no fault" absenteeism policy in this case was to penalize an employee, like Lindsay, who became subject to a fourteen-day suspension without pay because of work-related injury. As a result, Great Northern in essence deprived Lindsay of compensation to which he is entitled under the Act. To avoid this result, Lindsay's only recourse would have been to work despite his injury, an alternative clearly at odds with the beneficent purposes of the Act. Furthermore, although Lindsay's acceptance of employment at Great Northern implied acceptance of the absenteeism policy as a term of employment, *see Rowell v. Jones & Vining, Inc.,* 524 A.2d 1208, 1211 (Me.1987), it cannot be construed as a waiver of his rights to compensation under the Act. *See* 39 M.R.S.A. § 67 (Supp.1986).

The correct principle of law to be applied by the hearing commissioner in reaching his conclusion was to determine whether as

2. P.L. 1971, ch. 190, later amended by P.L. 1985, ch. 118 (effective September, 1985).

a fact Lindsay's suspension "was rooted substantially or significantly in the employee's exercise of his rights under the Workers' Compensation Act." *Delano*, 405 A.2d at 229. The hearing commissioner explicitly so found and we cannot say on this record that that finding was clearly erroneous. *See Dube v. Paradis Pulp and Logging Co., Inc.*, 489 A.2d 10, 11 (Me.1985).

The entry is:

The decision of the Appellate Division is vacated.

Remanded to the Appellate Division with directions to enter a judgment affirming the Commission.

It is further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550 together with his reasonable out-of-pocket expenses for this appeal.

NICHOLS, ROBERTS, WATHEN and GLASSMAN, JJ., concur.

SCOLNIK, Justice, with whom McKUSICK, Chief Justice, joins, dissenting.

I respectfully dissent.

The petitioner in this case alleged that his suspension from work violated 39 M.R.S.A. § 111 (1978), which provides in pertinent part: "No employee shall be discriminated against by any employer in any way for ... asserting any claim under this Act." There is no question that Lindsay's assertion of his right not to be forced into employment while physically incapacitated due to a work-related injury constituted a "claim" under the Workers' Compensation Act within the broad meaning of that term. *See Delano v. City of South Portland*, 405 A.2d 222, 227 (Me.1979). The sole issue before the court is whether the petitioner was "discriminated" against by his employer for asserting his claim within the meaning of Section 111. I conclude that the petitioner has suffered no discrimination.

Although "[t]he concept of 'discrimination' ... is susceptible of varying interpretations," *Regents of University of California v. Bakke*, 438 U.S. 265, 284, 98 S.Ct. 2733, 2745, 57 L.Ed.2d 750 (1978) (Powell,

J.), that term at the very least implies the accordance of differential treatment to persons or groups of persons that are in similar conditions or circumstances. In the employment context, the U.S. Supreme Court has noted that an employer "discriminates" against an employee "only when he treats that employee less favorably than he treats others similarly situated." *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 19, 100 S.Ct. 883, 894, 63 L.Ed.2d 154 (1980) (footnote omitted). However, "an employment practice that is applied evenhandedly to all employees represents a neutral policy that does not constitute discrimination, particularly if it is based on legitimate business concerns ..." *Duncan v. New York State Developmental Center*, 63 N.Y.2d 128, 134, 481 N.Y.S.2d 22, 25, 470 N.E.2d 820, 823 (1984), *rev'g* 93 A.D.2d 242, 463 N.Y.S.2d 540 (App.Div.1983).

The employment practice in use at Great Northern Paper Company is one such example of a neutral policy. The absenteeism policy in effect at the time of the petitioner's suspension subjects any employee to various disciplinary measures whenever that employee exceeds a specified number of absences, within a particular time period. Exempted from this class of employees are those whose absences were attributable to funeral leave, jury duty, union business or military service. The rationale underlying the absenteeism policy is to require that a certain number of employees appear for work on a routine and predictable basis at a given time. A requirement that employees be consistently present at work in order to maintain the continued operation of the employer's business is a legitimate business concern. *See, e.g., Duncan*, 481 N.Y.S.2d at 25 ("An employer should be permitted to take reasonable steps to secure a steady, reliable, and adequate work force.").

The court would include an employee's absence due to work-related injuries as an additional implied exception to the employer's absenteeism discipline policy. This exceeds the scope of the statute. The statute requires only that the employer not *discriminate* against the employee for assert-

ing a workers' compensation claim. In the absence of a showing of discrimination, the employer is free to establish legitimate business practices for the safe and efficient operation of his or her enterprise. Moreover, the absenteeism policy is to be applied across-the-board to both injured and non-injured workers alike who accumulate too many absences within a particular time frame. Section 111 does not require special or preferential treatment for workers injured on the job, but only that they not be treated differently from non-injured workers. The "no fault" policy in effect at Great Northern yields the latter result. To require otherwise would produce an untenable consequence. *Cf. Duncan,* 481 N.Y. S.2d at 25 ("To forbid absolutely any detrimental treatment of an injured worker would transform section 120 into a job security clause.")

So long as the petitioner's suspension was not "rooted substantially or significantly in the employee's exercise of his rights under the Workers' Compensation Act," there is no violation of Section 111. *Delano,* 405 A.2d at 229. The Commissioner here found that the petitioner's suspension was rooted substantially and significantly in the exercise of his rights under the Act based on testimony that "but for" his absence following his work-related injury he would not have been suspended. Nonetheless, as we reasoned in *Delano,* although Lindsay's suspension may have been the direct result of his absence for his work-related injuries, it does not automatically follow either that his employer had a retaliatory motive in suspending him for filing a workers' compensation claim, or, even assuming the existence of a retaliatory motive, that the improper motive was a "substantial factor" in Lindsay's suspension. *Id.* The Commissioner merely found a causal nexus between the petitioner's suspension and his asserting a workers' compensation claim. However, he failed to

discern any evidence of discrimination. Indeed, there is no evidence in the record that the employer suspended Lindsay because of a retaliatory motive, i.e., because Lindsay exercised his right under the Act of refusing to return to work that was hazardous to his work-related injury while recovering from that injury. Great Northern merely applied its facially-neutral absenteeism policy to the petitioner.

The Appellate Division therefore appropriately concluded that the Commissioner erred as a matter of law in finding discrimination under Section 111.[1] I would affirm the decision of the Appellate Division.

---

**1.** The Appellate Division utilized the framework for employment discrimination established in *Maine Human Rights Commission v. City of Auburn,* 408 A.2d 1253, 1262–63 (Me.1979), apparently in addition to the "substantial factor" test of *Delano.* I find it unnecessary for the Court

to determine, however, whether the standard outlined in *Maine Human Rights Commission* is the appropriate standard in this case because the decision of the Appellate Division is correct under the *Delano* standard.