782 A.2d 967 (2001)
344 N.J. Super. 549
Leonard N. CARTER, Jr., Plaintiff-Appellant,
v.
AFG INDUSTRIES INCORPORATED, William Cunningham, Harold Johnson, Defendants/Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 2001.
Decided October 30, 2001.
*968 James M. Clancy argued the cause for appellant (Friedman, Bafundo & Porter, Cherry Hill, attorneys; Mr. Clancy, on the brief).
Robert J. Hagerty, Mt. Laurel, argued the cause for respondents (Capehart & Scatchard, attorneys; Mr. Hagerty, of counsel and on the brief).
Before Judges HAVEY,[1] COBURN and WEISSBARD.
The opinion of the court was delivered by WEISSBARD, J.A.D.
Plaintiff, Leonard Carter, appeals from the grant of summary judgment dismissing his complaint for unlawful termination of employment in that he was the victim of discrimination based upon his assertion of a claim for workers' compensation benefits, in violation of N.J.S.A. 34:15-39.1, as well as discrimination in violation of N.J.S.A. 10:5-12, the Law Against Discrimination (LAD). Although we reject Carter's LAD Claim, we find that his discharge did violate the workers' compensation law. Accordingly, we reverse.
In February 1995, Carter was hired by defendant, AFG Industries, Incorporated (AFG), as a production technician. He remained in that position until his termination on February 20, 1996. On September 23, 1995, AFG's Human Resource Manager, William Cunningham, counseled Carter with respect to his absenteeism. Even though he disputed many of the alleged instances of absenteeism,[2] Carter did sign a document that included the following warning:
Please be advised that this is a last and final warning. If you should be absent or late in the next six months, your employment may be terminated.
On September 31, 1995, Carter injured his left shoulder at work. He reported the incident and was referred by AFG to its regular physicians, Cooper Occupational Health (Cooper), for medical treatment. Carter provided evidence, although disputed by Cunningham, that medical appointments, including therapy, had to be and were scheduled on off-work time. Carter did not miss any time from work as a result of his injury, but was placed on light duty for a period of time. He was ordered to return to full duty at some point and did so, despite continuing shoulder pain.[3] In January 1996 Carter became dissatisfied with the medical care he was *969 receiving at Cooper. As a result, he missed scheduled therapy appointments on January 23 and 25, 1996 and decided to seek an opinion from an independent physician of his own choice.[4] Thereafter, Cunningham informed Carter that such missed appointments were considered absences from work. Cunningham accompanied Carter to see Dr. Introcaso at Cooper on February 7, 1996, as a result of which more physical therapy appointments were scheduled. Although it is not entirely clear whether Carter attended any of the February therapy sessions, it is undisputed that he missed an appointment on February 19, 1996, as a result of a combination of feeling sick and inclement weather.
Central to Carter's present claim is a July 10, 1995 memo authored by Cunningham and directed to all employees entitled "Medical Follow-up Exams After An Injury." It stated:
In the unfortunate event that you get injured on the job and require medical treatment at the hospital, you must return to the hospital if a follow-up visit is scheduled.
These appointments are a must:
1. In making sure an injured employee is recovering properly.
2. To ensure an employee returns to work as quickly as possible which saves money.
If a required follow-up visit is missed it will be treated as an absence from work and a disciplinary action will follow according to your absentee record.
Your cooperation in this matter is appreciated.[5]
Cunningham testified to his purpose in enacting this policy:
My intention was that they go to the appointment whether they were supposed to be working or whether they were scheduled off. And if they didn't show up, then I was going to consider it an absence.
Q. Whether the appointment was scheduled during their work time or their day off?
A. Yes.
In accordance with this policy and as a result of the missed therapy appointment on February 19, 1996, taken in conjunction with the warning of September 23, 1995, Carter was terminated, for missing, in the words of his supervisor, a "mandatory physical therapy appointment" that constituted a "serious incident."[6]
In pertinent part, N.J.S.A. 34:15-39.1 reads as follows:
It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer....
As Judge Pressler noted in Lally v. Copygraphics, 173 N.J.Super. 162, 179, 413 A.2d 960 (App.Div.1980), aff'd, 85 N.J. 668, 428 A.2d 1317 (1981), "the policy of the retaliatory discrimination act [is] so firmly *970 grounded in public interest as to require assiduous protection and enforcement." Finding employer conduct "which undermines employee resort to workers' compensation benefits ... as a matter of `opprobrium' and as employer misconduct which is `particularly repellent'," id. at 180, 413 A.2d 960 (citing 2A Larson, Workman's Compensation Law (Sept.1979 Supp.), § 68.36 at 13-40, 13-42), this court conferred a common law cause of action for compensatory and punitive damages upon an employee discharged in violation of the statute. In confirming that decision, the Supreme Court said: "The statutory declaration of the illegality of such a discharge underscores its wrongful and tortious character for which redress should be available." Lally, supra, 85 N.J. at 670, 428 A.2d 1317. The statute expresses public policy, the violation of which constitutes an exception to the employment-at-will doctrine. Ibid. (citing Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 66-73, 417 A.2d 505 (1980)). Against this background, we turn to plaintiff's claim.
Plaintiff asserts that defendant's policy, expressed in Cunningham's July 10, 1995 memo, particularly when taken in conjunction with the requirement that medical treatment for compensable accidents be obtained in off-work hours, violates N.J.S.A. 34:15-39.1. The claim is that defendant's policy discriminates against workers injured on the job and thereby eligible for workers' compensation benefits. He also claims that his termination was the result of retaliation. Defendant denies any discrimination or retaliation and responds that plaintiff was fired pursuant to a neutral absenteeism policy, a position accepted by the motion judge.
First, we reject plaintiff's claim to the extent that it is based upon a retaliatory termination due to his compensable accident. We see no evidence that plaintiff was singled out for retaliatory treatment. Rather, we agree that he was discharged by virtue of AFG's policy, embodied in Cunningham's July 10, 1990 memo, to treat missed medical appointments as work absences, even when they were scheduled during non-work hours. On its face, that policy appears neutral in that it applies equally to all persons falling within its ambit; Carter is not singled out for special treatment. However, to determine whether the policy is discriminatory, further analysis is required.
Clearly, a worker who sustained the same injury as Carter, but not on the job, and required the same treatment, would not suffer the same consequences. Such an employee would likely schedule medical treatment on his or her own time, as Carter did. Yet, AFG would not count missed medical appointments by that worker as job absences, but would do so only with respect to compensable accidents. Such disparate treatment clearly discriminates against the injured worker receiving mandated medical care pursuant to the workers' compensation act. See N.J.S.A. 34:15-15. Of the two similarly situated employees, only the one with the job-related injury risks termination by missing appointments during off-duty hours. When applied to an individual, such as plaintiff, who has returned to work at full duty and is not missing any work time as a result of scheduled treatment, we conclude that defendant's policy violates N.J.S.A. 34:15-39.1. The critical fact is not whether the employer required treatment to be obtained on the employee's personal time, a fact disputed here, but that the policy was applied to a worker who had returned to full duty.
Our view might be different if the policy were applied only to workers who were not yet fully recovered from their injuries but were, for example, out of work *971 or working at light duty. In such case, the employer would have a legitimate interest in ensuring that the worker kept all appointments, whenever scheduled, so that he or she could be returned to health and full duty as quickly as possible. But that was not the case here. Carter was already working full time at his regular job when he missed the February 19, 1996 appointment. As applied to him, defendant's policy cannot be squared with the anti-discrimination policy strongly expressed in the statute. Because the provision of medical care is an obligation of the employer under the act, attendance at medical appointments constitutes the claiming of compensation benefits within the ambit of N.J.S.A. 34:15-39.1; there need not be a formal claim petition filed to invoke the protection of the statute. Cerracchio v. Alden Leeds, Inc., 223 N.J.Super. 435, 443, 538 A.2d 1292 (App.Div.1988); see also Palmer v. Miller Brewing Co., 852 S.W.2d 57, 61 (Tex.App.1993); Lindsay v. Great N. Paper Co., 532 A.2d 151, 153 (Me.1987).
By equating missed appointments on the employee's own time with job absences, AFG's policy has burdened the job injured worker with a condition not applicable to other employees with similar injuries. Absent a legitimate business reason for doing so, such conduct by an employer is not just unfair, but discriminatory. Discrimination "at the very least implies the accordance of differential treatment to persons or groups of persons that are in similar conditions or circumstances." Lindsay, supra, 532 A.2d at 154 (Scolnik, J., dissenting); see also Anderson v. Standard Register Co., 857 S.W.2d 555, 557 (Tenn.1993).
The present case is distinguishable from Galante v. Sandoz, Inc., 192 N.J.Super. 403, 470 A.2d 45 (Law Div.1983), aff'd, 196 N.J.Super. 568, 483 A.2d 829 (App.Div. 1984), appeal dismissed, 103 N.J. 492, 511 A.2d 665 (1986). There, the trial court upheld an absenteeism policy that did not excuse absences resulting from on-the-job injuries. Galante was fired after eleven absences from work, eight of which were the result of a work-related accident. Other than giving the employee some consideration for the fact that some absences were related to the job injury, all absences were treated the same under the employer's policy. The court found that such an "absence control policy is a legitimate attempt on the part of an employer to control chronic absenteeism and does not violate public policy." Galante, supra, 192 N.J.Super. at 407, 470 A.2d 45. In affirming the trial court, we said:
Plaintiff asks us to rule that, for the purpose of dealing with employee absenteeism, an employer may not enforce a facially neutral policy that equates work injury absences with absences otherwise caused. If such a prohibition is to be created, it is, in our view, the exclusive role of the legislature to create it.
The position taken by Galante appears to represent the majority view elsewhere: that a facially neutral policy that equates job-related injury absences with other absences does not violate anti-retaliation statutes. See, e.g., Swearingen v. Owens-Corning Fiberglas Corp., 968 F.2d 559, 563 n. 3 (5th Cir.1992) (collecting cases); Smith v. Dunlop Tire Corp., 663 So.2d 914, 918-19 (Ala.1995) (collecting cases). However, it is not the unanimous view. See Coleman v. Safeway Stores, Inc., 242 Kan. 804, 752 P.2d 645 (1988); Clifford v. Cactus Drilling Corp., 419 Mich. 356, 353 N.W.2d 469 (1984); Lindsay, supra, 532 A.2d at 151; Judson Steel Corp. v. Workers' Comp. Appeals Bd., 22 Cal. 3d 658, 150 Cal.Rptr. 250, 586 P.2d 564 (1978); see also Yoho v. Triangle PWC, Inc., 175 W.Va. 556, 336 S.E.2d 204, 210 (1985) (McGraw, J., dissenting).
*972 We need not decide in this case whether we agree with Galante. The critical distinction here is that plaintiff was not absent from work at all. Rather, AFG arbitrarily equated off-duty missed appointments with work absences, thereby discriminating against an employee because he claimed workers' compensation benefits, in the form of medical treatment, from the employer. Although neither our research nor that of counsel has unearthed that elusive "case in point," we conclude that the plain language and logic of the situation, viewed in light of the beneficial purposes of the statute, compel this result.
AFG's policy chills the employees' right to seek medical care for on-the-job injuries. If an employee realizes that discharge may result from missed medical appointments, even when the employee is back at work full time, the employee may be reluctant to make a worker's compensation claim and receive needed medical care. "Such a practice effectively hampers an employee's right to workers' compensation and thus contravenes public policy." Clifford, supra, 353 N.W.2d at 475. As the court said there, "employees must be protected from both subtle and blatant infringements on their statutorily granted rights." Id. at 476. The fact that the offending policy here was an indirect, rather than a direct, violation of the statute makes it no less objectionable. Coleman, supra, 752 P.2d at 652.
Because plaintiff's termination was triggered by his missed February 19, 1996 appointment, there existed a sufficient causal nexus between the discharge and the employer's conduct. In this case, we need not determine whether the appropriate standard is phrased in terms of "substantial factor," "sole or exclusive factor," or "determinative factor," see Anderson v. Standard Register Co., 857 S.W.2d 555, 557-58 (Tenn.1993), because, by any test, plaintiff's termination resulted directly from the missed appointment. Although already on "probation," he would not have been fired but for the February 19 incident, which, in turn, resulted from his attempt to seek medical care for his injuries under the Workers' Compensation Act. Thus, summary judgment was erroneously granted to defendant as to this aspect of plaintiff's claim, embodied in count one. Although, under our view, plaintiff would be entitled to summary judgment on this claim, he did not move for such relief in the trial court, nor did he argue before us that he was entitled to judgment as a matter of law. As a result, he will have to seek appropriate relief in the trial court consistent with this opinion.
Plaintiff's other contentions are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Reversed and remanded for further proceedings.
NOTES
[1] Judge Havey did not originally participate in this case, but has, with the consent of counsel, been added to the panel deciding the matter.
[2] Carter claims that he demonstrated to Cunningham that some of the dates listed as absences were in error and he claims that Cunningham agreed. Nevertheless, the document Carter signed contained all of the dates, with none eliminated. Cunningham testified, however, that he did not construe Carter's signature as constituting an admission that Carter agreed with all of the absences listed thereon.
[3] A report by Cooper indicates that Carter was to resume full duty on October 4, 1995.
[4] Carter did see his own doctor on January 31, 1996.
[5] Plaintiff claims he had no knowledge of this policy and had never seen the memo before the litigation began. His knowledge, or lack thereof, is not essential to our disposition. We reject plaintiff's contention that the memo was limited to treatment received at a hospital. Although the memo is poorly phrased, we have no doubt that it applied to all medical appointments occasioned by work injury, whether at a hospital or elsewhere.
[6] The termination came just four days before Carter's "probation" was due to expire, based on the September 23, 1995 warning.