2003 ME 134

**Diane JANDREAU**

v.

**SHAW'S SUPERMARKETS, INC., et al.**

**No. WCB–03–19.**

Supreme Judicial Court of Maine.

Argued: Oct. 15, 2003.

Decided: Nov. 25, 2003.

Alexander F. McCann, Esq. (orally), Portland, for employee.

William O. LaCasse, Esq. (orally), Doris V.R. Champagne, Norman Hanson & Detroy, LLC, Portland, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Both Diane Jandreau and Shaw's Supermarkets, Inc., appeal from a decision of a hearing officer of the Workers' Compensation Board (*McCurry, HO* ), granting Jandreau's petition to remedy discrimination. Shaw's contends that it was error to conclude that its termination of Jandreau's employment pursuant to a facially neutral six-month absenteeism policy constituted discrimination in violation of 39–A M.R.S.A. § 353 (2001). Jandreau contends that the hearing officer erred in permitting Shaw's to offset the backpay award by the amount of compensation already paid. Because we agree with Shaw's that the hearing officer erred in finding discrimination pursuant to section 353, we vacate the decision and do not reach Jandreau's contentions related to the nature of the remedy for that discrimination.

## I. BACKGROUND

[¶ 2] Jandreau began employment by Shaw's in 1994 and was working in its bakery in 1996 when she suffered a work-related injury to her lower back. She returned to work in the bakery after her injury with medically required work restrictions. She reinjured her back in January 2000 while lifting baking trays.

[¶ 3] Jandreau left work following the 2000 injury and underwent physical therapy. She testified that she was approved to return to work by her doctor in July 2000, subject to work restrictions that precluded repetitive bending or twisting, prolonged sitting or standing, lifting greater than twenty pounds, or working longer than four hours a day. Shaw's informed Jandreau that it could not accommodate her work restrictions and terminated her from employment in July 2000, pursuant to a long-standing policy providing for the termination of part-time employees who have been absent from work for six months, regardless of the reason for the absence.

[¶ 4] In November 2000, five months after the termination, Shaw's offered Jandreau reinstatement as a grocery bagger, which she declined. In a previous decree involving these parties, which is not the subject of this appeal, a hearing officer of the Board granted Jandreau's petition for review and awarded her continuing 100% partial incapacity benefits. The hearing officer found that Jandreau had not unreasonably refused a bona fide job offer of

work without good and reasonable cause, because the work proffered in November 2000 was not within her work restrictions.[1]

[¶ 5] Jandreau filed a separate petition to remedy discrimination pursuant to section 353 in November 2001. In the decision and subsequent findings of fact and conclusions of law that are the subject of this appeal, the hearing officer found that Jandreau's absence from work for six months prior to her termination was due to her work-related injury. The hearing officer concluded that although Shaw's applied a facially neutral termination policy,

> [t]he effect of applying that policy here . . . was to penalize the injured employee because of her exercise of her right to be out of work where the employer could not accommodate her restrictions. Shaw's policy was facially neutral, but its actions in terminating Ms. Jandreau were not only "rooted substantially and significantly," in Ms. Jandreau's exercise of her rights under the Act, Shaw's actions were solely based upon her exercise of those rights.

(quoting *Lindsay v. Great N. Paper Co.,* 532 A.2d 151, 153 (Me.1987)). As a remedy for the discrimination, the hearing officer ordered "back pay from July 26, 2000, to the present and continuing until [Jandreau] is reinstated, less the workers' compensation paid to her, and she is entitled to a reasonable attorney's fee."

[¶ 6] Both parties filed petitions for appellate review, which were granted and consolidated for appeal pursuant to 39–A M.R.S.A. § 322 (2001).

## II. DISCUSSION

### A. The Application of Section 353 to an Employer's Facially Neutral Termination Policy

[¶ 7] Section 353 of the Act prohibits discrimination against employees "in any way for testifying or asserting any claim" under the Act.[2] The hearing officer relied on two of our decisions—*Lindsay,* 532 A.2d at 153–54 and *Delano v. City of S. Portland,* 405 A.2d 222 (Me.1979)—in concluding that the application of Shaw's facially neutral termination policy toward Jandreau constituted a violation of section 353. We conclude that these precedents do not support a finding of discrimination in this case.

---

1. Shaw's filed a petition for appellate review from the 2000 decision, and we summarily vacated the decision and remanded in light of *Morse v. Fleet Fin. Group,* 2001 ME 142, ¶¶ 4, 13, 782 A.2d 769, 774 (employee cannot show entitlement to 100% partial incapacity benefits based on a partially incapacitating injury and personal characteristics, absent some evidence, e.g., work-search evidence, that work is unavailable in the labor market as a result of the injury). On remand, the hearing officer reduced Jandreau from 100% to 75% partial incapacity benefits.

2. Section 353 states:

   An employee may not be discriminated against by any employer in any way for testifying or asserting any claim under this Act. Any employee who is so discriminated against may file a petition alleging a violation of this section. The matter must be referred to a hearing officer for a formal hearing under section 315, but any hearing officer who has previously rendered any decision concerning the claim must be excluded. If the employee prevails at this hearing, the hearing officer may award the employee reinstatement to the employee's previous job, payment of back wages, reestablishment of employee benefits and reasonable attorney's fees.

   This section applies only to an employer against whom the employee has testified or asserted a claim under this Act. Discrimination by an employer who is not the same employer against whom the employee has testified or asserted a claim under this Act is governed by Title 5, section 4572, subsection 1, paragraph A.

   39–A M.R.S.A. § 353 (2001).

[¶ 8] In *Delano,* the employee was reclassified to a lower pay scale after refusing to perform part of his duties in his post-injury employment that contained a risk of re-injury. 405 A.2d at 223–24. We determined that there is no per se discrimination when an employer makes a bona fide employment decision according to the employee's post-injury ability to work, even though the employee's inability to work may result from a work-related injury. *Id.* at 228–29. Because the "reclassification [was] based on the lack of bona fide qualification for the higher classified occupation," the employer's reclassification was not discriminatory. *Id.* at 229.

[¶ 9] In contrast with *Delano,* we found in *Lindsay* that an employer's facially neutral absenteeism policy was discriminatory and contrary to section 353. *Lindsay,* 532 A.2d at 153. The employer, Great Northern Paper, had a "no fault" absenteeism policy whereby employees with a certain number of unexcused absences, regardless of the reason for those absences, were penalized with a two-week suspension without pay. *Id.* at 152. Due, in part, to Lindsay's previously unexcused absences and, in part, to his work-related absences, Lindsay was suspended without pay for fourteen days. *Id.*

[¶ 10] We held that the suspension without pay was discriminatory pursuant to former 39 M.R.S.A. § 111 (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 353), containing substantially similar language to current section 353. *Lindsay,* 532 A.2d at 153. Although the absenteeism policy was facially neutral, we found that it was discriminatory as applied to Lindsay "because it label[led] his rightful absence because of a work-related injury as an unexcused absence." *Id.* Unlike *Delano,* where the employee was prevented by an injury from performing a job, the employee in *Lindsay* was able to return to his pre-injury employment. *Id.* at 152. Therefore, the suspension in *Lindsay* served no other purpose than to penalize the employee for missing work as a result of a work injury. *Id.* at 153.

[¶ 11] Since the hearing officer's decision in this case, we have had another opportunity to consider the application of section 353 to a facially neutral termination or discipline policy in *Laskey v. Sappi Fine Paper,* 2003 ME 48, 820 A.2d 579. In *Laskey,* the employee was able to return to his pre-injury job for several years after his injury, the only difference in his work capabilities being: "(1) he needed help more frequently than others because of his weight lifting restriction; and (2) his assignments were affected somewhat by his inability to work more than eight hours a day." *Id.* ¶¶ 2, 4, 820 A.2d at 580. As part of an overall downsizing effort, the employer instituted a policy that employees with work restrictions, who were not able to perform essential functions of their job, would no longer have their work restrictions accommodated and would be terminated. *Id.* ¶ 5, 820 A.2d at 580.

[¶ 12] We affirmed the hearing officer's finding that the termination was not related substantially and significantly to the employee's exercise of his rights under the Act, but was based on bona fide employment considerations. *Id.* ¶ 15, 820 A.2d at 582. We rejected the employee's assertion that it is discrimination to terminate an employee on the basis of work restrictions that are the result of a work-related injury, stating: "[t]hat interpretation would make any employment action due to a work restriction arising from a work-relat-

ed injury a prohibited discrimination."[3] *Id.* ¶ 13, 820 A.2d at 582.

[¶ 13] The facts in this case fall squarely within the rationale of *Laskey* and *Delano*, and are distinguishable from *Lindsay*. Unlike the employee in *Lindsay*, who was physically capable of returning to work after his injury, Jandreau has consistently maintained that she cannot return to her pre-injury employment, nor can she perform the alternative work that the employer offered to her. Given the nature of her injury, the six-month time period mandated in Shaw's absenteeism policy was a reasonable amount of time for Shaw's to make a nondiscriminatory employment decision to terminate Jandreau based on her physical incapacity to return to work. Neither the Act nor our decisions require an employer to keep an employee on the books indefinitely when the employee can no longer meet the requirements of a job.

Accordingly, we conclude that the decision to terminate Jandreau was not discrimination prohibited by section 353 because it was based on legitimate employment considerations directly bearing on the employee's physical ability to return to work.[4]

**B. Employer's Obligation to Accommodate an Employee's Work Restrictions**

[¶ 14] Relying on 39–A M.R.S.A. § 218 (2001), Jandreau contends that although she cannot return to her pre-injury job and cannot perform the alternative job that was offered to her, Shaw's has a duty to take greater steps to accommodate her work restrictions and return her to work. Indeed, section 218 establishes an employer's obligation under certain circumstances to reinstate and make reasonable accommodations for the physical condition of an injured employee.[5]

3. We also noted that our conclusion with respect to the Workers' Compensation Act did not foreclose the employee from bringing an action pursuant to the Maine Human Rights Act, 5 M.R.S.A. § 4572 (2002). *Laskey v. Sappi Fine Paper*, 2003 ME 48, ¶¶ 13–14, 820 A.2d 579, 582.

4. The hearing officer would not have been precluded from finding discrimination if there had been other evidence of a discriminatory motive or intent. The hearing officer did not make such a finding, nor do we see any evidence to support such a finding in the record.

5. Section 218 provides:

*Upon petition of an injured employee,* the board may require, after hearing, that the employee be reinstated as required by this section.

1. Reinstatement rights. When an employee has suffered a compensable injury, the employee is entitled, upon request, to reinstatement to the employee's former position if the position is available and suitable to the employee's physical condition. If the employee's former position is not available or suitable, the employee is enti-

tled, upon request, to reinstatement to any other available position suitable to the employee's physical condition.

2. Reasonable accommodation required. In order to accommodate the placement of an injured employee as required under this section, the employer must make reasonable accommodations for the physical condition of the employee unless the employer can demonstrate that no reasonable accommodation exists or that the accommodation would impose an undue hardship on the employer. In determining whether undue hardship exists, the board shall consider:

A. The size of the employer's business;
B. The number of employees employed by the employer;
C. The nature of the employer's operations; and
D. Any other relevant factors.

3. Time period; discrimination prohibited. The employer's obligation to reinstate the employee continues until one year, or 3 years if the employer has over 200 employees, after the date of the injury. Any employer who reinstates an employee under this section may not subsequently discriminate against that employee in any employment decision, including decisions related to tenure, promotion, transfer or reemploy-

[¶ 15] However, the protections of section 218 do not automatically apply whenever there is a work-related injury, but are invoked only "[u]pon petition of an injured employee." 39–A M.R.S.A. § 218. Jandreau's view that an employer must, in effect, honor the requirements of section 218 in every workers' compensation case, even when the employee has not filed a petition for reinstatement, is contrary to the plain language of the statute, and we have previously rejected this interpretation. *Dahms v. Osteopathic Hosp. of Me.,* 2001 ME 145, ¶ 9 n. 3, 782 A.2d 774, 777; *Dufour v. Internal Med. Assocs.,* 1998 ME 169, ¶ 7 n. 4, 713 A.2d 339, 341; *Thompson v. Claw Island Foods,* 1998 ME 101, ¶¶ 4–6, 713 A.2d 316, 317–18.

[¶ 16] In the absence of a petition requesting reinstatement, employers are encouraged by the Act to accommodate work-related injuries and return employees to work, but are not required to do so.[6] We decline Jandreau's invitation to read into the anti-discrimination statute a requirement that the employer must create light-duty employment for an employee in the absence of a petition by the employee for reinstatement pursuant to section 218. Before the strict reciprocal rights and responsibilities of section 218 are imposed, the employee must first make a positive assertion of a willingness to return to work by filing a petition seeking reinstatement. Jandreau has not filed such a petition.

## III. CONCLUSION

[¶ 17] Shaw's employment decision to terminate Jandreau was nondiscriminatory because it was based on Jandreau's physical incapacity to return to work, and not due to her "testifying or asserting any claim" under the Act. 39–A M.R.S.A. § 353. In addition, because Jandreau has not sought reinstatement in accordance with section 218, Shaw's was not under a duty to take steps to accommodate Jandreau's work restrictions and return her to work. For these reasons, we vacate the hearing officer's decision.

The entry is:

Decision of the hearing officer is vacated and remanded to the Workers' Compensation Board for further proceedings consistent with this opinion.

ment following a layoff, because of the employee's assertion of a clam or right under this Act. Nothing in this subsection may be construed to limit any protection offered to an employee by section 353.

4. Limitations. This section does not obligate an employer to offer an injured employee employment or reemployment in:

A. Supervisory or confidential positions within the meaning of the 29 United States Code, Section 152; or

B. Any position for which the employee is not qualified.

5. Failure to comply. The employer's failure to comply with the obligations under this section disqualifies the employer or insurance carrier from exercising any right it may otherwise have to reduce or terminate the employee's benefits under this Act. The disqualification continues as long as the employer fails to offer reinstatement or until the employee accepts other employment. If any injured employee refuses to accept an offer of reinstatement for a position suitable to the employee's physical condition, the employee is considered to have voluntarily withdrawn from the work force and is no longer entitled to any wage loss benefits under this Act during the period of refusal. 39–A M.R.S.A. § 218 (2001) (emphasis added).

6. Employers can reduce their obligation to pay incapacity benefits by the amount of earnings pursuant to 39–A M.R.S.A. § 214(1)(B), (C) (2001). Moreover, pursuant to 39–A M.R.S.A. § 214(1)(A) (2001), an employer can terminate benefits during the period of refusal when an employee unreasonably refuses a good faith offer of bona fide employment.