*2009 ME 50*

**Raymond LAVOIE**

v.

**RE–HARVEST, INC., et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 16, 2008.
Decided: May 12, 2009.

James F. Pross, Esq. (orally), Tarbell & Brodich, P.A., Augusta, for Re–Harvest, Inc.

John B. Cole, Esq. (orally), Skelton, Taintor & Abbott, P.A., Auburn, for Raymond Lavoie.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1]  Re–Harvest, Inc., appeals from a judgment of a Workers' Compensation Board hearing officer (*Goodnough, HO*) granting a claim for discrimination under the Workers' Compensation Act.  We review whether an employer who terminates an employee who is unable to perform any work within weeks of a substantial work injury, but otherwise complies in full with the Act, has engaged in discrimination pursuant to 39–A M.R.S. § 353 (2008).  On the facts found by the hearing officer, we conclude that it has not, and we vacate a contrary conclusion of the hearing officer.

## I.  FACTUAL BACKGROUND

[¶ 2]  Re–Harvest terminated Lavoie as soon as it became clear that, because of his work-related injury, he could not perform his ordinary job duties or a light duty assignment designed for Lavoie.  Lavoie contended that he was entitled to remain employed by Re–Harvest for a longer period of time than was provided by Re–Harvest, despite his inability to work at all, and that his termination constituted discrimination.

[¶ 3]  Re–Harvest is a recycling and waste management company with fewer than twenty employees.  Raymond Lavoie, now approximately fifty-four years old, began working for Re–Harvest in 2005 as a project manager and a "jack of all trades."  He performed a wide variety of tasks for the company, including truck driving, operating heavy equipment, and preparing permit applications.  Lavoie aggravated his pre-existing degenerative disc disease and spondylolisthesis when he slipped off the running board of a Re–Harvest truck on March 30, 2006.  He promptly informed

Re–Harvest that he thought the injury was serious and that he would be asserting a claim for workers' compensation benefits.

[¶ 4]   Lavoie was unable to work following his fall from the truck. Re–Harvest designed a light duty job for him, but Lavoie was not able to undertake even the limited tasks of that job. Re–Harvest terminated his employment and gave the equipment assigned to Lavoie to another employee. The termination occurred less than four weeks after the injury. From that point on, Re–Harvest paid total incapacity benefits voluntarily and without prejudice. Lavoie regained some work capacity approximately a year later, and in October of 2007, he was able to secure full-time employment at wages comparable to what he earned at Re–Harvest.

[¶ 5]   Lavoie filed a petition for award, a petition for payment of medical and related services, and a petition to remedy discrimination pursuant to 39–A M.R.S. § 353. He was awarded the protection of the Act for the 2006 injury, payment of medical bills, and ongoing partial benefits. The hearing officer also granted the petition to remedy discrimination. Because Lavoie did not have employer-paid health insurance following his termination from Re–Harvest, the hearing officer awarded him $7,074.80 as a sanction, the amount he paid out-of-pocket for health insurance between jobs, and a reasonable attorney fee for the prosecution of the discrimination claim. Re–Harvest filed a petition for additional findings of fact and conclusions of law and proposed findings. The hearing

officer granted the petition in part, and, determining that Lavoie in fact suffered no current earnings incapacity, altered the decree to award no ongoing benefits. Re–Harvest filed its petition for appellate review, which we granted pursuant to M.R.App. P. 23 and 39–A M.R.S. § 322 (2008). Re–Harvest appeals only the hearing officer's decision granting the petition to remedy discrimination.

## II.   DISCUSSION

[¶ 6]   Title 39–A M.R.S. § 353 prohibits discrimination against employees "in any way for testifying or asserting any claim" under the Workers' Compensation Act.[1] The key question for the hearing officer on Lavoie's claim of discrimination was whether the motivation for the employee's termination " 'was rooted substantially or significantly in the employee's exercise of his rights under the Workers' Compensation Act.' " *Maietta v. Town of Scarborough*, 2004 ME 97, ¶ 14, 854 A.2d 223, 227 (quoting *Delano v. City of So. Portland*, 405 A.2d 222, 229 (Me.1979)).

[¶ 7]   Re–Harvest contends that it was error to grant the petition to remedy discrimination because the hearing officer found that Lavoie could not perform any job functions and that there was no evidence of discriminatory motive. Because an employee's inability to perform the essential functions of the job constitutes, as a matter of law, a legitimate, nondiscriminatory reason for terminating the employee, Re–Harvest argues that the hearing offi-

1.   Title 39–A M.R.S. § 353 (2008) provides, in relevant part:

An employee may not be discriminated against by any employer in any way for testifying or asserting any claim under this Act. Any employee who is so discriminated against may file a petition alleging a violation of this section. The matter must be referred to a hearing officer for a formal hearing under section 315, but any hearing officer who has previously rendered any decision concerning the claim must be excluded. If the employee prevails at this hearing, the hearing officer may award the employee reinstatement to the employee's previous job, payment of back wages, reestablishment of employee benefits and reasonable attorney's fees.

cer erred as a matter of law in sanctioning it for terminating Lavoie.

[¶ 8] Re–Harvest cites *Jandreau v. Shaw's Supermarkets, Inc.*, 2003 ME 134, 837 A.2d 142 in support of its arguments. In *Jandreau,* the employee suffered two injuries while working for Shaw's and was unable to return to work even at light duty. *Id.* ¶¶ 2–3, 837 A.2d at 143. Shaw's terminated her employment six months after the second injury, pursuant to a long-standing policy providing for the termination of any part-time employee who had been absent from work for six months, regardless of the cause of the absence. *Id.* ¶ 3. A hearing officer granted Jandreau's petition to remedy discrimination, finding that the effect of the facially neutral termination policy was to penalize an injured worker for exercising her rights under the Act. *Id.* ¶ 5, 837 A.2d at 144.

[¶ 9] We vacated that decision, concluding that the employer had established a legitimate business purpose for the termination. We stated:

> Given the nature of her injury, the six-month time period mandated in Shaw's absenteeism policy was a reasonable amount of time for Shaw's to make a nondiscriminatory employment decision to terminate Jandreau based on her physical incapacity to return to work. Neither the Act nor our decisions require an employer to keep an employee on the books indefinitely when the employee can no longer meet the requirements of a job.

*Id.* ¶ 13, 837 A.2d at 146. We concluded that "the decision to terminate Jandreau was not discrimination prohibited by section 353 because it was based on legitimate employment considerations directly bearing on the employee's physical ability to return to work." *Id.*

[¶ 10] Referencing *Jandreau,* the hearing officer in the matter before us made several critical factual findings.[2] He found that "the employee was no doubt terminated because he could no longer perform any aspect of his job duties." He also found that Lavoie remained totally incapacitated from the injury in March of 2006 through the end of the year. Regarding the employer, he found that "Re–Harvest was, and remains, a small business (less than 20 employees) with less room for creative accommodation than a larger business, like Shaw's Supermarkets," and that "Re–Harvest is a small business where less business flexibility may exist and margins for error are narrower."

[¶ 11] Despite the finding that the termination occurred because Lavoie could not work, the hearing officer found that other facts supported a finding of discrimination. Specifically he found that Re–Harvest "had no specific written policy regarding the termination of injured workers," although no provision of the Act or Board rule requires such a written policy, and he found that at the time of the termination, "it was not yet known how long it would take the employee to recover to the point when he could return to at least light duty employment."

[¶ 12] The hearing officer evidently found most significant the fact that termination from employment meant the end of

---

2. When there is a request for additional findings of fact and conclusions of law, as there was in this case, we do not assume that the Workers' Compensation Board hearing officer made all the necessary findings to support its judgment. *Maietta v. Town of Scarborough,* 2004 ME 97, ¶ 17, 854 A.2d 223, 228. "Instead, we review the original findings and any additional findings made in response to a motion for findings to determine if they are sufficient, as a matter of law, to support the result and if they are supported by evidence in the record." *Id.*

Lavoie's employer-paid health insurance.[3] It was that loss that the hearing officer compensated with the award, in the form of a sanction, apparently determining that Re–Harvest was obligated to continue Lavoie's employment for an undetermined period of time even though he would be unable to work.

■ [¶ 13] The hearing officer ultimately found that Lavoie's "termination was discriminatory relative to other employees since it was based upon Mr. Lavoie's *status as an injured worker unable to perform light duty work.*" (Emphasis added.) The problem with this conclusion becomes immediately apparent. It simply cannot be the law that an employer necessarily commits discrimination whenever the employer terminates an employee whose injuries prevent him from working. The focus of the Workers' Compensation Act is to ensure that employees who are unable to work, or are limited in that capacity, as a result of a work-related injury receive compensation for lost wages. The purpose has never been to guarantee continued employment status to an employee who cannot work.

■ [¶ 14] Moreover, although proximity in time between the assertion of a claim for workers' compensation benefits and the adverse employment action may constitute circumstantial evidence of discriminatory intent, *see* 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 104.07[3] (2008), where there is no question that the employee cannot perform any work functions weeks after the injury, and there is no evidence that the employee's health is likely to change in the near future, there is no requirement in the law that the employer maintain a nonworking employee on the rolls for long periods of

time during which the employee is totally unable to work. Rather, the employer is required to act promptly in responding to the claim, to pay compensation and furnish medical and other services, and to otherwise comply with the Workers' Compensation Act. *See* 39–A M.R.S. §§ 201(1), 205, 206 (2008).

[¶ 15] In circumstances where an injured employee asserts that he or she will be able to return to employment, the Act provides very specific rights. Upon the filing of a petition by the former employee, the employer may be required to reinstate the employee to the employee's former position or if unavailable, a different, suitable position, and to make reasonable accommodations for the employee's work injury. 39–A M.R.S. § 218 (2008). Lavoie, however, did not file such a petition for reinstatement likely because he was unable to work for many months after the injury. Lavoie made no claim that he would return to work soon, and he presented no evidence that he could engage in continued employment with Re–Harvest. In fact, Lavoie would not return to work of any kind for approximately a year following his injury.

[¶ 16] Neither the Act itself nor the Rules promulgated by the Workers' Compensation Board explicitly establish any time period during which an employer is required to maintain a totally incapacitated worker's employment status. Although there was, in this case, a short time frame between the work injury and the termination, the telling fact is that Lavoie did not claim to have a recoverable work capacity and, in fact, had no work capacity for many months after the injury.

■ [¶ 17] Where the employer has complied with the Act and has paid bene-

---

**3.** The hearing officer mentioned the loss of health insurance no fewer than four times, separate from the consideration of fringe benefits and the nature of sanctions.

fits timely, we will not read into the Workers' Compensation Act an additional requirement that employers maintain people who are completely unable to work on their employment rolls or face claims for discrimination under the Act. Although there may be other provisions in Maine and federal law that would allow a longer period of leave,[4] those provisions are simply not enforceable through the Workers' Compensation discrimination provisions.

The entry is:

The decision of the Workers' Compensation Board hearing officer vacated with regard to the petition to remedy discrimination.

---

4. *See, e.g.,* 42 U.S.C.S. §§ 12101–12117 (2003) (Americans With Disabilities Act); 5 M.R.S. §§ 4551–4576 (2008) (Maine Human Rights Act); 29 U.S.C.S. §§ 2601–2619 (2005) (Family and Medical Leave Act); 26 M.R.S. §§ 843–848 (2008) (Maine Family Medical Leave Act). We make no comment on whether Lavoie would have been eligible to take advantage of the protections afforded by these statutes.